



IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT COURT OF ILLINOIS

| | |
|---|---|
| Dr. Leigh Riley<br><br>              Plaintiff<br><br><br>    v.<br><br><br>INFORMATION SYSTEMS AUDIT AND<br>CONTROL ASSOCIATION INC. (ISACA<br>INC.)<br>              Defendant | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS<br>OF ANTITRUST LAWS**<br><br>**JURY TRIAL DEMANDED**<br><br><br>**1:22-cv-04465<br>Judge Virginia M. Kendall<br>Magistrate Judge Maria Valdez<br>RANDOM** |

1

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | NATURE OF ACTION | 2 |
| II. | JURISDICTION AND VENUE | 6 |
| III. | PARTIES | 8 |
| IV. | RELEVANT MARKET | 9 |
| V. | TRADE AND COMMERCE | 9 |
| VI | FACTUAL ALLEGATIONS WITH RESPECT TO VIOLATIONS OF ANTI-TRUST LAWS | 10 |
| | A. VIOLATION OF SECTION 7 OF CLAYTON ACT BY THE DEFENDANT | 10 |
| | B. VIOLATION OF SECTION 2 OF SHERMAN ACT BY THE DEFENANT | 12 |
| VII. | ANTI-TRUST INJURY TO PLAINTIFF | 29 |
| VIII. | CLAIMS FOR RELIEF | 31 |
| IX. | REQUEST FOR RELIEF | 39 |
| | CERTIFICATE OF SERVICE | 41 |

## COMPLAINT

Plaintiff alleges upon personal knowledge as to herself and her own actions, and upon information and belief, including self-investigation as follows:

## I.   NATURE OF ACTION

1.      The Plaintiff is a direct consumer of Defendant's CMMI Licensing services in which the Defendant operates as a 100% monopoly. The Plaintiff, as consumer, is the direct purchaser of Defendant's CMMI Professional Certification Services which are an integral and substantive part of CMMI Licensing Business of the Defendant. The Plaintiff as direct purchaser has been paying regular/periodic annual fee to the Defendant for her CMMI Professional Certifications. The Plaintiff has suffered a direct antitrust injury from the Defendant's anticompetitive, monopolization and abuse of dominance conduct in violation of Section 2 of Sherman Act (15 U.S.C. § 2) and Section 7 of the Clayton Act (15 U.S.C. § 18). Specifically, since the Year 2016, the aforesaid antitrust injuries being inflicted on the Plaintiff, *inter-alia,* include restraint on the trade-output of the Plaintiff, obstruction in normal functioning of the Plaintiff due to anti-competitive policies, enforcement of anti-competitive agreements on the Plaintiff, unfair enrichment at the cost of the Plaintiff, exorbitant increase in prices of various items of CMMI Licensing Business, poor and stagnated CMMI product development, improper service delivery of CMMI Licensing Business, unilateral dissolution of Licensee Representative Body, deception and false claims made with Plaintiff  as the consumer, targeting of Plaintiff, unjustified revoking of CMMI Professional Certifications of Plaintiff without Cause on 26 October 2019, denial of market to the Plaintiff, exclusion of Plaintiff from the market and many such similar antitrust injuries arising out of abuse of

dominance activities of Defendant and such antitrust injuries are continuing till now.

2. After revocation of Plaintiff's CMMI Professional Certifications by the Defendant (the Defendant being a 100% monopoly), the Plaintiff cannot engage with anyone else to work for a living using her CMMI Professional Certifications for which she has made colossal investments over last 16 years. The Plaintiff has been rendered completely jobless and has lost her professional livelihood.

3. Plaintiff's injury is inextricably intertwined with the Defendant's 100% monopoly situation, anti-competitive activities, abuse of dominance, unilateral conduct, and enforcement of anti-competitive agreements. Because of this reason, the Plaintiff has suffered concrete and particularized harm/injury of loss of business, loss of livelihood, mental harassment, loss of health, loss of property, loss of pets, loss of home, injury to family, injury due to targeting and discrimination because of the violations of antitrust laws by the Defendant.

4. As authorized by Section 4 of the Clayton Act (15 U.S.C. § 15), as a private citizen, the Plaintiff is seeking damages from the Defendant for violations of antitrust laws viz. Section 2 of Sherman Act (15 U.S.C. § 2) and Section 7 of Clayton Act (15 U.S.C. § 18) that cover actual and compensatory damages of around US 30,000,000 and treble damages for violation of antitrust laws with costs incurred for reasonable legal expenses.

5. As authorized by Section 16 of the Clayton Act (15 U.S.C. § 26), the Plaintiff is also seeking injunctive relief i.e., restoration/invocation of her CMMI Professional Certifications as they were existing prior to 26 October 2019 when the injury happened to the Plaintiff and imposition of restraint on all anti-competitive, antitrust, monopolization and abuse of dominance activities of the Defendant.

6. Under Section 4(b) of Clayton Act (15 U.S.C. § 15), the Plaintiff is within the Statute of Limitation, the antitrust injuries starting from the Year 2016 to date on which the

injury of revoking of CMMI Professional Certifications on 26 October 2019 to the completion of Merger/Acquisition of creating a 100% monopoly being announced on 27 May 2020 up to today when the Defendant is continuously conducting anti-competitive, monopolization and abuse of dominance activities in the CMMI Licensing Business.

7.      CMMI Model is a best practices-based process model which is used by the organizations for getting themselves appraised by a CMMI Certified Lead Appraiser (like the Plaintiff) for determination of their Organizational Maturity Level Rating also called CMMI Maturity Level Rating [or colloquially CMMI Maturity Level Certification].

8.      The services related to CMMI *inter alia* include: (1) Provision of CMMI Professional Certification Services to CMMI Certified Lead Appraisers, (2) Licensing of CMMI Trademark, (3) Licensing the use of CMMI Model Document, (4) Conduct of CMMI Appraisals to provide CMMI Maturity Level Rating to Organizations needing an Appraisal, (5) Provision of CMMI Professional Certification Services to CMMI Instructors, and (5) Conduct of CMMI Trainings.  Such services can be collectively called as CMMI Licensing Business for the sake of brevity and easy nomenclature.

9.      From the year 1997, the CMMI Licensing Business was owned by the Co-Conspirator, Carnegie Mellon University, that is based out of Pittsburgh, PA. The Defendant acquired the CMMI Licensing Business from the Co-Conspirator in the Year 2016 and completed its integration and merger on 27 May 2020.

10.     Due to this acquisition, the Defendant, a business enterprise having a turnover of USD 83,201,260 in the Year 2019, has successfully conspired with the Co-Conspirator to illegally hold a 100% monopoly position in violation of Section 7 of the Clayton Act (15 U.S.C. § 18) in the relevant market of CMMI Licensing Business. The Defendant is now the only provider of CMMI Licensing Business in USA and in the World.

11.     The Defendant provides the CMMI Licensing Services to Licensees who are the direct consumers of the Defendant's CMMI Licensing Services. The CMMI Certified Lead Appraisers are the direct consumers of CMMI Professional Certification Services of the Defendant.

12.     The Defendant is in violation of the Section 2 of Sherman Act (15 U.S.C. § 2) and Section 7 of the Clayton Act (15 U.S.C. § 18) due to its 100% monopoly situation, anti-competitive activities, abuse of dominance, unilateral conduct, and enforcement of anti-competitive agreements. The monopoly of the Defendant is creating its harmful effects for the CMMI Licensing Business, as alleged herein, including as follows:

▪     Unilateral conduct of a monopoly [like unilateral increase in prices, dissolution of Licensee Representative Board, revoking professional certifications without cause]

▪     Higher Prices [increase of prices within a range of 40% to 400%, introduction of new fees for various items],

▪     Curtailed Output [restriction in conduct of CMMI Appraisals per CMMI Lead Appraiser per year without any objective basis],

▪     Lowered Quality as visible by the substantial reduction in the number of CMMI Appraisals in USA [a reduction of approx. 40%],

▪     Reduced and Stymied Innovation [no major Version of CMMI Model has emerged since 2017],

▪     Exclusionary Conduct and Discriminatory Behavior with Licensees and CMMI Certified Professionals.

## II.     JURISDICTION AND VENUE

13.     Plaintiff's claims for injuries sustained by reason of, *inter alia*, Defendant's

6

violations of Section 2 of the Sherman Act (15 U.S.C. § 2) and Section 7 of the Clayton Act (15 U.S.C. § 18) are brought pursuant to **Sections 4 of the Clayton Act** (15 U.S.C. § 15) to recover actual and compensatory damages of around USD 30,000,000 and treble damages, interests, costs and legal fee. Plaintiff's claims for injuries sustained by reason of, *inter alia*, Defendant's violations of Section 2 of the Sherman Act (15 U.S.C. § 2) and Section 7 of the Clayton Act (15 U.S.C. § 18) are brought pursuant to Section 16 of Clayton Act (15 U.S.C. § 26) to secure injunctive relief.

14.     This Court has original and subject matter jurisdiction over the Sherman Act and Clayton Act claims asserted in this Court pursuant to 28 U.S.C. §§ 1331, 1337 and **Sections 4 and 16 of the Clayton Act** (15 U.S.C. §§ 15 and 26).

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332. Plaintiff is in complete diversity with the Defendant which is an IRS 501(c)(6) mutual benefit business league business enterprise registered at California and headquartered within the jurisdiction of this District. The aggregate amount in exceeds significantly in excess of $30,000,000, exclusive of interest and costs.

16.     Venue is proper in this judicial District pursuant to Section 12 of the Clayton Act (15 U.S.C. §§ 22) and 28 U.S.C. § 1391 (b), (c) and (d) because Defendant resides, transacts business in this District; a substantial part of the events giving rise to Plaintiff's claims occurred in this District; and a substantial portion of the affected interstate trade and commerce has been carried out in this District. Venue is also proper in this District because acts in furtherance of the alleged wrongdoing took place here.

17.     Further, Defendant operates and transacts business within this District, Defendant has substantial contacts with this District, and Defendant engaged in illegal conduct that was directed at and had the effect of causing injury to Plaintiff.

7

18.     The activities of Defendant described herein, are within the flow of, are intended to, and have direct, substantial, and reasonably foreseeable effects on the foreign and interstate commerce of the United States.

### III.     PARTIES

**A.      Plaintiff:**

19.     Plaintiff is a United States Air Force Veteran and CMMI Certified Lead Appraiser and is a direct purchaser and consumer of the Defendant's CMMI Professional Certification Services and has paid regular/periodic annual fee for aforesaid professional certification. Plaintiff is a Ph.D. by educational qualification and is an experienced consultant with 34 years in the IT industry and is conducting CMMI Appraisals since last 16 years and had developed a substantial business and build a formidable reputation in this line. The Plaintiff has been regularly paying the annual fee for the CMMI professional certifications to the Defendant that include (1). CMMI Certified V2.0 Lead Appraiser for Development, (2). CMMI Certified 2.0 Lead Appraiser for Services (3).   CMMI Certified V2.0 Lead Appraiser for Acquisition, and (4). CMMI Certified Lead Appraiser for People CMM.

**B.      Defendant and Co-Conspirators:**

20.     The Defendant, Information Systems Audit Control Association Incorporated, dba ISACA Inc, is a California-registered mutual-benefit IRS 501(c) (6) business league business enterprise with its principal place of business located at Schaumberg, Illinois. The Defendant has a 100% monopoly in CMMI Licensing Business.

21.     Co-Conspirator is the Carnegie Mellon University, based out of Pittsburg, PA, that conspired with the Defendant to sell the CMMI Product Suite including CMMI Model,

8

CMMI Trademark and CMMI Appraisal Methods to create a 100% monopoly in the CMMI Licensing Business in violation of the Section 7 of the Clayton Act (15 U.S.C. § 18).

## IV.    RELEVANT MARKET

22.    The relevant market in which the Defendant is 100% monopoly is called the CMMI Licensing Business. Currently, the Defendant is operating independently of the competitive forces [because there is no competitor] in the relevant market because no other organization in the world, except the Defendant, owns the CMMI Maturity Model Certification, the CMMI Model Document and the CMMI Trademark in the entire world. This enables the Defendant to impact completely the consumer and the US market. The Defendant has 100% market share of CMMI Licensing Business. The size and resources of the Defendant are huge to kill any competition. The Defendant has strong economic power to dominate the CMMI Certified Lead Appraisers like the Plaintiff in an autocratic manner. The direct consumer, like the Plaintiff, who is the direct purchaser of Defendant's CMMI Professional Certification Services is completely [100%] dependent on the Defendant and has no recourse in face of anti-competitive and abuse of dominance activities of the Defendant due to its 100% monopolization.

## V.    TRADE AND COMMERCE

23.    The Defendant, being a 100% monopoly in CMMI Licensing Business controls all of this market in the United States. The Defendant's anticompetitive rules apply to and have been enforced by the Defendant on nation-wide basis over CMMI Certified Lead Appraisers like the Plaintiff. These rules govern the conduct of CMMI Certified Lead Appraisers like the Plaintiff. Defendant's conduct alleged herein has, among other harms related to 100% monopolization leading to abuse of dominance, has inflated the Annual

9

CMMI Services Licensing Fee, Annual Professional Certification Fee, and Per Appraisal Fee. The Defendant is engaged in interstate commerce and activities affecting interstate commerce in the United States.

## VI. FACTUAL ALLEGATIONS WITH RESPECT TO VIOLATIONS OF ANTI-TRUST LAWS

### A. VIOLATION OF SECTION 7 OF CLAYTON ACT BY THE DEFENDANT:

24.     The scheme of CMMI Licensing Business that provides CMMI Maturity Level Rating was initially operated, since 1980s to 1990s to the year 2016, by the Software Engineering Institute, under the auspices/ownership of the Co-Conspirator. This was funded by Department of Defense under the DARPA Program.

25.     In the fiscal year 2013, the Co-Conspirator launched Carnegie Innovations LLC which was its majority owned subsidiary. One of the portfolio companies of Carnegie Innovations LLC was Clearmodel LLC *dba* CMMI Institute to perform the work of CMMI Licensing and Certification Agent of the Software Engineering Institute.

26.     The Co-Conspirator notified the aforesaid information in a news release on 10 January 2013. The name Clearmodel LLC *dba* CMMI Institute was given by the Co-Conspirator to usurp the goodwill and trust of Software Engineering Institute. It must be noted Clearmodel LLC *dba* CMMI Institute had no conventional infrastructure of an Institute like that of Software Engineering Institute. The Co-Conspirator, by doing this, perpetrated a fraud on the Plaintiff and other CMMI Certified Lead Appraisers. The CMMI Licensees, the organizations who are using CMMI Maturity Level Rating and Government Agencies using the CMMI Maturity Level Rating were/are a victim of this fraud.

27.     Mr. Kirk Botula who was the Managing Director of Carnegie Innovations LLC was made the CEO of the company Clearmodel LLC *dba* CMMI Institute. Mr. Kirk Botula worked as the CEO of Clearmodel LLC *dba* CMMI Institute from June 2012 to June 2019. Mr. Dan Torrens was the COO of the company Clearmodel LLC *dba* CMMI Institute from June 2013 to August 2019.

28.     To execute the merger of Clearmodel LLC *dba* CMMI Institute with itself, the Defendant incorporated a company called ISACA Enterprise Inc [IEI] in 2016 as a Delaware for-profit C-corporation with 100% shares owned by the Defendant. As per the Defendant's Annual Report of Year 2016 Page 42, under Note 1, it is mentioned that IEI was incorporated to act as a holding company of for Defendant's acquisitions.

29.     On 01 March 2016, IEI acquired 100% of the interest in a for-profit entity Clearmodel LLC *dba* CMMI Institute.

30.     As of 30 November 2016, Clearmodel LLC was the only subsidiary of IEI. [Source: Defendant's Annual Report of Year 2016, on Page 27, under Note 1, Para 6].

31.     On 20 December 2016, Clearmodel LLC's name was amended to CMMI Institute LLC.   [Source: Pennsylvania Department of State, Bureau of Corporations and Charitable Organizations, as per filing on 22 December 2016]

32.     On 11 November 2019, IEI was merged into its sole subsidiary CMMI Institute LLC. [Source: Pennsylvania Department of State, Bureau of Corporations and Charitable Organizations, as per filing on 15 November 2019]

33.     From December 2019, CMMI Institute LLC's financials are part of the Defendant's financials. [Source: Defendant's Annual Report of Year 2020, on Page 27, under Note 1, Para 2].

11

34.    The Defendant announced its completion of merger/integration with the acquired entity on 27 May 2020 through its Marketing Manager Ms. Katie Tarara.

35.    Thus, the aforesaid act of violation of Clayton Act by the Defendant and the Co-Conspirator is within the statute of limitation because the completion of merger/integration activity happened on 27 May 2020.

36.    Due to this acquisition, the Defendant has deliberately, intentionally, and willfully, conspired with the Co-Conspirator to illegally hold a 100% monopoly position in the CMMI Licensing Business in violation of Section 7 of the Clayton Act [15 U.S.C. § 18].

## B.    VIOLATION OF SECTION 2 OF SHERMAN ACT BY THE DEFENANT:

### *Restriction of Plaintiff's Output by the Defendant:*

37.    The Defendant has restricted the trade output of the Plaintiff by its anti-competitive policies. It is to be noted that, Defendant restricts the number of CMMI Appraisals carried out per year by one CMMI Certified Lead Appraiser to 16 per year. The Defendant has not provided any statistical, quantitative, and objective basis for imposing the limit on conduct of 16 CMMI Appraisals per CMMI Certified Lead Appraiser per Year. In this way, the Defendant has imposed a trade restraint on the Plaintiff.

38.    The Defendant's position that the CMMI Appraisal Limit has been imposed to maintain the quality of Appraisals is not an objective position but is a completely subjective act to restrict the output for its profit maximization.

39.    As per the Plaintiff's experience of last 15-16 years of conducting the Appraisals, the Plaintiff can conduct additional 08 to 12 CMMI Appraisals over and above the Defendant's Appraisal Limit of 16 CMMI appraisals per Lead Appraiser per year. This has created a huge

business loss to the Plaintiff and other such CMMI Certified Lead Appraisers. The reason is the anti-competitive agreement and policies of Defendant no.1.

40.    The majority of CMMI Appraisals are on an average being conducted over a period of 05-10 days for the Conduct Appraisal Phase. Considering 7.5 days per CMMI Appraisal as the average requirement for the "conduct Appraisal Phase", 16 appraisals will require 120 days. Adding 25% of time for the pre-appraisal and post- appraisal work, this will add 30 days to the 120 days, thereby, meaning 150 days, are consumed for conducting 16 CMMI appraisals on an average by one CMMI Certified Lead Appraiser in one year.

41.    On a very conservative estimate, considering an average of 225 to 250 working days in a year, this leaves around 75 to 100 days vacant per year for a CMMI Certified Lead Appraiser.

42.    Thus, with this empirical calculation, it is established that the CMMI Certified Lead Appraiser has time for additional 07 to 12 CMMI Appraisals over and above the Defendant no.1's Annual Appraisal Limit of 16 CMMI appraisals per CMMI Certified Lead Appraiser per year. This is creating a huge business loss to the Plaintiff and other such CMMI Certified Lead Appraisers.

43.    The Defendant has not provided any statistical, quantitative, and objective justification for the CMMI Appraisal Limit of 16 appraisals per Lead Appraiser per year, a blind and bald statement, that this is being done to maintain the quality of CMMI Appraisals, is not adequate to justify this restriction on Plaintiff's trade output.

***Unfair Increase in Prices of CMMI Licensing Services and Introduction of New Fees for many Items which were not charged earlier:***

44.     After the acquisition of the CMMI Model, the Defendant is completely able to dictate the price, and has increased the price of the Licensing services in a unilateral manner, from a range of 40% to 400%, over various service items, without any consultation, with the Plaintiff and other CMMI Certified Lead Appraisers and Licensees. In fact, the Defendant has introduced new Fee to be charged for 05 items in a unilateral manner:

| Particulars of Licensing Fee | Licensee Fee prior to CMMI Model Acquisition by Defendant | License Fee after CMMI Model Acquisition by Defendant | Percent Increase |
|---|---|---|---|
| Virtual Delivery Fee *per* CMMI FOC Training Course (02-days) | Not charged | USD 500 | New Fee introduced |
| Virtual Delivery Fee *per* CMMI BDE Training Course (01-day) | Not charged | USD 250 | New Fee introduced |
| Virtual Delivery fee per CMMI BSE Course (01-day) | Not charged | USD 250 | New Fee introduced |
| Fee for downloading the PDF of the Model *per annum* | Not charged | USD 100 to USD 250 | New Fee introduced |
| Enterprise License Fee for downloading the PDF of the Model *per annum* (10 to 50 units) | Not charged | USD 1600 to USD 8000 | New Fee introduced |
| Appraisal Fee *Per Appraisal* for Virtual Delivery of Appraisal | USD 900 | USD 1500 | 67% |

| | | | |
|---|---|---|---|
| Appraisal Fee *per Appraisal* for Virtual Delivery of High Maturity Appraisal | USD 900 | USD 2000 | 122% |
| Appraisal Fee for Virtual Delivery of Multi-model Appraisal | USD 1800 | USD 3000 | 67% |
| Certified Lead Appraiser Professional Fee *per annum* for Licensees without primary sponsored certified Lead Appraiser | USD 100 | USD 5000 | 400% |
| Certified Lead Appraiser Professional Fee *per annum* for Certified Lead Appraiser who is not a High Maturity Lead Appraiser | USD 3600 | USD 5000 | 39% |
| Certified Instructor Professional Fee *per annum* | USD 3240 | USD 5000 | 54% |

***Unfair Enrichment:***

45.     By restriction of output of the CMMI Certified Lead Appraiser to 16 Appraisals per year and by underutilizing the optimum productive capacity of the existing CMMI Certified Lead Appraisers in this manner, the Defendant maximizes its profit by making/enrolling new additional CMMI Certified Lead Appraisers and earns a hefty Professional Certification Fee from the new CMMI Certified Lead Appraisers. It must be noted that the Defendant deliberately adopts this policy to under-utilize the existing CMMI Certified Lead Appraiser to create unfair enrichment at the cost of the Plaintiff and other CMMI Certified Lead Appraisers.

46.     The Defendant imposes unfair increase in prices and introduces new fees for items that were not being charged earlier to enhance its unfair enrichment by abuse of dominance. In the past couple of years, the Defendant has enjoyed unfair enrichment by

increasing the prices to the tune of 40% to 400% for various items at the cost of the Plaintiff and other CMMI Certified Lead Appraisers.

47.     Historically, being funded by the US DOD, CMMI Model was free for public use. In contrast, to maximize its unfair enrichment, the Defendant is now charging USD 1600 per annum to USD 8000 per annum for Enterprise-wide (10 seats to 50 seats) for CMMI Model Download, USD 150 per annum for single-user CMMI Model Download and USD 250 per annum for single-user CMMI Model Download with online viewing of CMMI Model.

48.     This is against public policy and is glaring example of abuse of dominance by the Defendant because the intellectual property of the CMMI Model was developed using US DOD funds. As such, the Defendant's charging for the use of CMMI Model is a stunning example of unfair enrichment. This has injured the Plaintiff and other CMMI Certified Lead Appraisers. This has also injured the CMMI Licensees and the organizations undergoing CMMI Appraisal by imposing prohibitive costs. There is an indirect impact of the CMMI Model not being used now because of this cost imposition and that in turn has impacted the business of the Plaintiff.

With aforesaid unfair enrichment practices, the Defendant's net income has gone up from USD 162,993 in the Year 2019 to USD 18,119,333 i.e., the Defendant's net income has increased by 11017%.

***Restriction on Technical and Scientific Development of the CMMI Model:***

49.     The main component/ingredient of the Defendant's product in the CMMI Licensing Business is the CMMI Model. The Defendant has completely restricted and limited the Technical and Scientific Development of the CMMI Model and has stymied innovation of the product.

50. The CMMI Model quality is determined by the adoption of the CMMI Model by US Companies which in turn is determined by the number of CMMI Appraisals conducted for US Companies. In the Year 2015, the last year, when the CMMI Model was being managed by the Software Engineering Institute [SEI] of Carnegie Mellon University [CMU], the number of CMMI Appraisals carried out in USA were 483.

51. The adoption of CMMI Model by the US Companies, since the Year 2016, the year from when the CMMI Model is being managed by the Defendant, has stagnated. The number of CMMI Appraisals conducted on US Companies in the Year 2021 is 467. Thus, there is a stagnation on the number of CMMI Appraisals carried out in US Companies and this is because of the stagnation of the CMMI Model.

52. This has impacted the Plaintiff and other CMMI Certified Lead Appraisers. The inertia on the part of the Defendant due to lack of competitiveness emerging out of the 100% monopolization has resulted in poor business for the Plaintiff and other CMMI Certified Lead Appraisers.

53. The scientific and technical development of the CMMI Model has come to a standstill under the Defendant because it is an absolute monopoly without any competition, and it has not invested in the Institutional Infrastructure required for the scientific and technical development of the CMMI Model.

54. Another indication of the scientific and technical development of the CMMI Model is the interest it creates in the academic circles which in turn can be measured by the number of books written on CMMI Model or Research Articles published on the CMMI Model.

55. On this indicator, based on the information circulated on the Internet, the CMMI Model, under the Defendant, miserably fails because not many books or Research Articles have been published on the CMMI Model since the Year 2016.

56.     From the Year 2002 to Year 2015, 21 Books and 82 Research Articles were published on the CMMI Model. In comparison, since 2016 onwards, when the CMMI Model is being managed by the Defendant, no book has been published and only 07 research articles have been published on the CMMI Model. This further confirms the stagnation of CMMI Model with respect to its technical and scientific development under the Defendant.

57.     The Defendant has changed the Version of CMMI Model from CMMI Version 1.3 to CMMI Version 2.0 around the Year 2016 when it acquired the CMMI Model. This was primarily driven by the fact that earlier to 2016, CMMI Model was free for public use whereas the Defendant is now charging USD 1600 per annum to USD 8000 per annum for Enterprise-wide (10 seats to 50 seats) for CMMI Model Download, USD 150 per annum for single-user CMMI Model Download and USD 250 per annum for single-user CMMI Model Download with online viewing of CMMI Model. Hence the change of Version 1.3 to Version 2.0 is NOT an indication of development of the CMMI Model but is an indication of the profit-maximization behavior of the Defendant for unfair enrichment.

***Usurping the Goodwill of the predecessor by Improper and Fraudulent means:***

58.     The Defendant is maintaining an empty shell website called CMMIINSTITUTE.COM for the shell company that the Defendant maintains as a company called CMMIINSTITUTE LLC. It is a fact that the Defendant's so-called "CMMI Institute" does not have the infrastructure of a "conventional institute". CMMI Institute LLC is just a company registered within the city of Pittsburgh in the State of Pennsylvania and is being maintained, skeletally, to create a deceptive impression by the Defendant of a conventional institute's infrastructure. The main purpose of the CMMI Institute LLC is to justify the domain

name CMMIINSTITUTE.COM.

59.     The use of word "CMMI Institute" by the Defendant creates an impression of existence of an "institutional structure" like a team of directors, scientists, and academicians, i.e., the typical paraphernalia of an Academic Institution like Software Engineering Institute. There are no details of organizational infrastructure provided on the Defendant's website for the CMMI Institute. The CMMI team of Defendant, now, consists of a Business Manager, Training Manager, Quality Manager and Product Manager, with these aforesaid managers being supported by a couple of assistant managers/executives/interns. The total number definitely falls within the range of 10-15. This, by no standards, can be considered a structure equivalent to an Academic Institution.

60.     This injured the Plaintiff and other CMMI Certified Lead Appraisers tremendously in the eyes of the customer and has had a negative impact on Plaintiff's business.

***Abuse of Dominance by having No Accreditation or Regulatory Control/Supervision on the CMMI Maturity Level Rating provided by Defendant despite the fact that CMMI Certification is being used as Evaluation Criteria for Federal and State Government Bids:***

61.     It is to be noted that the Defendant is an absolute monopoly and there is no competitor against it in USA and in the entire world for CMMI Licensing Business. Because of being an absolutely monopolist organization, despite being a Certification Organization providing CMMI Maturity Level Rating Certification to US Companies, the Defendant has refused to bring its CMMI Certification under any kind of Accreditation/Regulatory Control of an Accreditation Board or Regulatory Board though this is a norm for any Certification Program.

62.     This is a deep fundamental flaw in the CMMI Certification Process of the Defendant. This is explained here in the following paragraphs which is hurting the Plaintiff and

the other CMMI Certified Lead Appraisers phenomenally.

63.     Certification Standards, *for example,* ISO Standards are developed by International Organization for Standardization [ISO] based at Geneva by collective collaboration of National Standards Bodies [NSBs] [*for example,* American National Standards Institute, ANSI of USA] of the various countries [around 150 plus] of the world. These NSBs collectively produce an ISO Standard, every five to seven years, while working through their representatives in global Technical Committees. This Certification Process is governed by the Accreditation Control Mechanism as per ISO 17021: Rules for Certification Bodies.

64.     Various countries have their Independent Accreditation Boards [like, ANAB of USA or UKAS of UK or COFRAC of France], who in turn, authorize the private companies or government entities, called Certification Bodies [CBs], to certify. All ISO Certification Bodies [CBs] must work under the accreditation control of at least one Accreditation Board to issue an accredited Certificate. On the contrary, the Defendant does not follow any such Rules of Certification Bodies according to ISO 17021. It owns and publishes the CMMI Model. It is trying to act both as Accreditation Board and Certification Body rolled into one. A very serious conflict of interest is created here because an organization cannot act both as a Certification Body and Accreditation Board. *This is a deep fundamental flaw and creates conflict of interest within the Defendant's system comparable to being both the judge and the prosecution.* The Defendant can carry out this completely autocratic behavior, independent of all certification rules, because it is an absolute monopoly, with no competition at all, in the CMMI Licensing Business in USA and in the world. This hierarchy of certification/accreditation is figuratively compared below:

| | |
|---|---|
| **ISO**<br>(Publishes the ISO Standard) | Defendant [ISACA Inc] has NO supervisory/governance control by a Regulator or Accreditation Board. It is performing the functions of both an Accreditation and Certification Body rolled into one which creates a conflict of interest making the Defendant – the judge and prosecution both. This is against the internationally accepted best practice procedures and against public policy. |
| **Accreditation Boards** [provide authorization to Certification Bodies as per ISO 17021 Rules for Certification Bodies] | |
| **Certification Bodies**<br>[Certify organizations needing certification] | |
| **Certified Organization** [Clients needing Certifications] | |

65.    It is to be noted that Defendant, despite being a completely private organization, the CMMI Maturity Level Rating Certification of the Defendant, is being used by the Federal and State Government Agencies, [for example, US Department of Defense, Department of Education, Department of Human Health and Safety, NASA, etc.] use the Defendant's CMMI Maturity Level Rating Certification for granting SCORING POINTS to the potential contractors in government's tenders/bids.  Two recent examples are the CIOSP4 and POLARIS bids from US DOD.

66.    Because of this reason, the potential US Companies, both in the field of software and IT service industry, get themselves appraised as per the Defendant's CMMI Appraisal Method, to get the CMMI Maturity Level Rating Certification. Since the Defendant's CMMI

Maturity Level Rating Certification is being used by the U.S. Government Agencies for giving SCORING POINTS, it is shocking that the Defendant's CMMI Certification Activity is a completely private activity WITHOUT any governance/accreditation control of any Independent Regulatory Board or an Accreditation Board.

67.     In the Government Bids, the public exchequer money is involved, and so it is in the interest of public policy that the Defendant's CMMI Maturity Level Rating Certification is brought under supervisory/regulatory control and supervision of an Independent Accreditation Board/Regulatory Board. Otherwise, the Defendant's CMMI Maturity Level Rating Certification Program is open to corruption, malpractices, and favoritism in absence of any supervisory control.

***Unilateral, Abuse of Dominance Behavior of the Defendant with respect to Anti-Competitive Agreements with the Plaintiff, other CMMI Lead Appraisers and Licensees:***

68.     The Defendant, having no competition as such, controls the market by implementing one-sided, unconscionable, anti-competitive conditions in the Certification and Licensing Agreements with its consumers of CMMI Licensing Business, i.e., the Plaintiff, other CMMI Lead Appraisers and Licensees, and abuses its dominance in this way.

69.     Such agreements of the Defendant are unenforceable being in violation of antitrust laws. Being a completely monopolist organization, the Defendant's Licensing Agreement with the Plaintiff, other Lead Appraisers and Licensees is completely dominated by the Defendant in the following areas, which need to be seen as examples of UNILATERALISM and abuse of dominance by having

70.     *Abusive Termination without Cause Clause:* The Plaintiff, other CMMI Lead

Appraisers and Licensees are in business with the predecessor of the Defendant since last 15-20 years. The Defendant, being a private organization, is completely driven, only and only, by profit concerns. To abuse the dominance, the Defendant terminates the Agreements without cause if the Plaintiff, any other Certified Lead Appraiser or Licensee, asserts their rights or raises some concerns on business-related issues. This leads to complete destruction of the Plaintiff's Business having invested 15-20 years in the business mentally, physically, and financially.

71. *Complete Inequity in Arbitration Process:* The Defendant selects all the arbitrators, arbitration forum (Cooks County Illinois USA), and the laws of arbitration of American Arbitration Association [AAA]. The Plaintiff, other CMMI Certified Lead Appraisers and the Licensees, have no say in these areas.

72. *Rejection of Arbitration as Dispute Resolution Mechanism:* The Defendant has an absolute right to reject the Arbitration as a dispute resolution mechanism and forces the Licensees into oppressive and vexatious litigation. The Plaintiff was refused Arbitration as a Dispute Resolution Mechanism by the Defendant.

73. *Inequity in the Governing Law:* The Defendant forces the Governing Law as the home state of Illinois, which is discriminatory to the Plaintiff who belongs to other State.

74. *Inequity in Territorial Jurisdiction:* The Defendant forces the exclusive territorial jurisdiction of the Cooks Count, Illinois, USA and/or the Northern District Court of Illinois on the Plaintiff.

75. *Inequity in Financial Liability:* The Defendant forces unlimited financial liability on the Plaintiff and limits its financial liability to itself to a very small amount, to the extent of a few thousand dollars only.

*Unilateral, Abuse of Dominance Behavior of the Defendant with respect to Dissolution of Licensee Board:*

76.     The Defendant unilaterally dissolved the Licensee Board called the Partner Advisory Board on 13 March 2021 without putting any substitute in place till date and there is no Licensee partner representative body in place at this moment. This indicates complete abuse of dominance by the Defendant.

*Denial of Market Access by Arbitrary Use of Unilateral Termination of Professional Certifications and Licensing Agreements without Cause:*

77.     The Defendant deploys the dirty trick of denying market access by unilateral termination without cause of Professional Certification Agreements and Licensee Agreements to eliminate the Licensees out of business by introducing unconscionable clauses in the License Agreement and by misusing its dominant position. In the Year 2021, the Defendant terminated 05 such agreements on wrong pretexts by just using the Termination Without Cause Clause.

*Absence of Appeals Process:*

78.     The Defendant does not have any Appeals Process and acts completely autocratically in situations of conflict. In addition, the Defendant deprived the Plaintiff of an Appeals Process by terminating her Professional Certifications without Cause.

*Termination Without Cause despite stating Termination with Cause:*

79.     The Defendant terminated the Plaintiff's Professional Certification Agreement cause but has alleged that it is terminating such agreement without cause despite having a

cause. The Defendant does this as an abuse of monopolistic position. The Defendant deprived the Plaintiff of an Appeals Process by terminating her Professional Certifications without Cause despite having a cause.

### Protection of Market:

80.     The Defendant can protect any market using its dominant position with absolute monopoly and only a thorough investigation can reveal the conduct of the Defendant when so many examples as illustrated here are available for abuse of dominance by the Defendant.

### Abuse of Dominance Behavior with the Licensees:

81.     The Defendant, being an absolute monopoly, is carrying out of abuse of dominance with all Licensees. This is evident from the Minutes of the Meeting held on 11 March 2022 between the Licensees and the Defendant's Management where all the characteristics of abuse of dominance behavior were identified as key issues including the one-sided License Agreement. The Licensees have written a letter to the CEO of the Defendant on date 06 April 2022 for acting on the strained relationships.

### Unfair, Deceptive and Fraudulent Practices being carried out by the Defendant:

82.     Under the Section 5 of the FTC Act, unfair or discriminatory trade practices fall under abuse of dominant position for an absolutely monopolist organization with zero competition. Since the Defendant is in dominant position, is an absolute monopoly without any competition in the CMMI Licensing Business, therefore, unfair trade practices of the Defendant will fall within the purview of violation of the Section 5 of FTC Act. The

Defendant is carrying out the CMMI Business under the domain name CMMIINSTITUTE.COM. The Defendant is deceiving the world, the US Government, State Governments, and the US Market by operating the domain name CMMIINSTITUTE.COM. This is creating a false impression of existence of an "institutional structure" like a team of directors, scientists, and academicians, i.e., the typical paraphernalia of an Institute. In fact, there is no organization called CMMI Institute having an institutional infrastructure like that of Software Engineering Institute, USA. If one goes to the CMMI Institute website [CMMIINSTITUTE.COM], there are no details of organizational infrastructure provided on it because none exists. Instead of an institute, in the line of an organization like Software Engineering Institute [sei.cmu.edu] or similar such institute, the Defendant's CMMI Institute is a "paper" LLC company called CMMI Institute LLC registered in the State of Pennsylvania. The Defendant is running this business with a skeletal staff of 10-15 individuals with approximately following structure: Marketing Team: 01 V.P., 01 Manager, 01 Assistant; Quality Team: 01 Director, 01 Manager, 03 Assistants. Thus, by carrying out false advertisement of being a "conventional Institute", by distribution of misleading information to the Plaintiff, other CMMI Certified Lead Appraisers, Licensees and US Companies through its website CMMIINSTITUTE.COM. By distribution of information of this nature that lacks a reasonable basis related to character, method or place of production and suitability for use, the Defendant is harming the business interests of the Plaintiff.

83.     It can be easily observed that the Defendant is trying to impersonate the good-will and reputation of the predecessor organization called Software Engineering Institute.

**The Defendant is making false claims on webpages of its website:**

84.     The Defendant is making false claims on webpages of its website: *[https://www.isaca.org/enterprise/cmmi-performance-solutions]* related to CMMI Performance Solutions without any supporting scientific peer-reviewed data.

85.     *First False claim on Defendant's website:* This false claim is quoted verbatim here as follows from the aforesaid webpage: *"CMMI has proven to improve business performance in the following ways: [a]. Reduce rework by 60%, [b]. Improve Product Quality by 70%, [c]. Improve Productivity by 54%, [d]. Average Improvement in Defect Containment."* The fact of the matter is that there is nothing to prove these claims. It is important to test these claims of the Defendant in terms of what data they have with respect to organizational performance by using CMMI Performance Solutions related to sample size, when such studies were carried out and where are the research documents available.

86.     *Second False Claim on Defendant's website:* The Defendant is claiming on its said webpage: *[https://www.isaca.org/enterprise/cmmi-performance-solutions]* that CMMI Performance Solutions are used by *"Thousands of high-performing organizations"* which have *"achieved sustainable business success through CMMI adoption, demonstrating their ability as capable business partners and suppliers."* There is nothing mentioned to back-up this claim. Further, the Defendant claims that more than 10000 organizations have used the CMMI Model. Once again, this claim is not backed up by any fact.

87.     *Third False Claim on Defendant's website:* The Defendant has falsely claimed on its webpage that *"for 30+ years, high-performing organizations have achieved clear, sustainable business results with Defendant's Capability Maturity Model Integration [CMMI®] models."* It is pertinent to note that Defendant completed the merger/integration of the CMMI Model from the Co-Conspirator on 27.05.2020. In this situation, Defendant cannot claim that Defendant's CMMI Model has been existing for last 30+ years. Thus, this

is factually incorrect statement. Thus, the Defendant cannot claim the legacy of Software Engineering Institute with respect to CMMI Model, even though it has purchased the CMMI Model. The Defendant is making a false claim and ought to state the correct facts with respect to the age of the Defendant's CMMI Model because it is not 30+ years as claimed by the Defendant but at the most 02-03 years.

***Deceptive Maturity Level Rating being provided to User Organizations [US Companies] by the Defendant:***

88.     In the current scheme, the organizations undergoing CMMI Appraisal and rated from CMMI Maturity Level 2 to 5 need not necessarily be of higher competence in any manner. The reason for this is the Defendant's CMMI Maturity Level Rating is given by a defective and deceptive process, is deeply flawed and is different from the Software Engineering Institute's CMMI Maturity Level Rating program used prior to 2016. The Defendant's CMMI Maturity Level Rating is not representative of organizational process maturity as it is claimed. The reason is that this is determined based on a very small sample [called Organizational Unit] that is not representative of the organization under appraisal at all. Even within the small sample of Organizational Unit, the Maturity Level Ratings based on one project are EXTRAPOLATED to the entire Organizational Unit. Further, this small sample being random generated and is called Random Generated Sample [RGS] which is very arbitrary and artificial and has no relation with reality. The algorithm of the random sample has not been peer-reviewed by scientists. Thus, when the US Government Agency, like the Department of Defense, is engaging a contractor, and, if the CMMI Appraisal Level Rating is one of the criteria of evaluation or to provide SCORING POINTS, influencing the Govt's decision, then, the Government Contracting Officer is being deceived. The crux of the matter

is that Defendant's CMMI Maturity Level Rating is an absolutely false indicator and does not reflect the organizational maturity at all.

## VII.        ANTI-TRUST INJURY TO PLAINTIFF

89.    The Plaintiff is a United States Air Force Veteran and experienced consultant with 34 years in the IT industry. Experience includes working with organizations in reengineering and/or developing new business processes and leading organizational change. She has significant experience with the CMMI Institute's CMMI model constellations including the CMMI for Development and CMMI for Services. The Plaintiff has contributed to the design and execution of several process improvement projects across a spectrum of organizations as well as developed and implemented project management capabilities within these organizations.

90.    The Plaintiff is an experienced project manager, software developer, and process engineer.  In addition, she is a Certified SCAMPI A Lead Appraiser, PMP, and InTP Manager and Assessor. She has earned a BS in Project Management, an MBA in Technology Management, and a Doctorate in Organizational Management/Information Systems and Technology, all with the University of Phoenix.

91.    Plaintiff's personal CMMI Lead Appraiser certifications were revoked based on irrelevant and unsubstantiated claims as an act of abuse of dominance of its 100% monopoly by the Defendant.

92.    The Plaintiff is the consumer of Defendant's CMMI Licensing services. As a direct purchaser, the Plaintiff has been paying individual professional certification charges to the Defendant on regular basis as per the Fee Schedule of the Defendant.

93.    The Plaintiff has been paying per Appraisal License Fee to the Defendant on regular basis as per the Fee Schedule of the Defendant.

94.     The Plaintiff's injury is inextricably intertwined with the antitrust, monopolization and abuse of dominance conduct of the Defendant.

95.     The Plaintiff suffered direct injury by the Defendant's antitrust activities. Such injuries inter alia include *inter-alia,* include restraint on the trade-output of the Plaintiff, obstruction in normal functioning of the Plaintiff due to anti-competitive policies, enforcement of anti-competitive agreements on the Plaintiff, unfair enrichment at the cost of the Plaintiff, exorbitant increase in prices of various items of CMMI Licensing Business, poor and stagnated CMMI product development, improper service delivery of CMMI Licensing Business, unilateral dissolution of Licensee Representative Body, deception and false claims made with Plaintiff  as the consumer, targeting of Plaintiff, unjustified revoking of CMMI Professional Certifications of Plaintiff without Cause on 26 October 2019, denial of market to the Plaintiff, exclusion of Plaintiff from the market and many such similar antitrust injuries arising out of abuse of dominance activities of Defendant and such antitrust injuries are continuing till now.

96.     The Defendant's Certification Contract is unenforceable because it promotes anti-trust, anti-competitive activities.

97.     The Plaintiff's loss is phenomenal because due to the 100% monopoly of the Defendant, the Plaintiff cannot take up the job of performing CMMI Appraisals anywhere else.

98.     The Plaintiff's business closed down and the stress has caused Plaintiff's health to decline considerably. The Plaintiff have spent months in therapies to try to mitigate the effects.   The Plaintiff suffered grievous loss to her reputation with colleagues, customers and in society.

99.     The Plaintiff defaulted on business loans and monies owed to vendors. The Plaintiff had to sell her home and all her assets in order to have enough money to survive.  The Plaintiff's income has been reduced to a pittance.

100.　The Plaintiff suffered immense psychological trauma because she had to move to a location that she could afford. Because of this reason, the Plaintiff had to re-home her 3 most beloved dogs as she was not able to have them in the rental accommodation, she is forced to live in currently.

101.　The Plaintiff had to take multiple courses so that she can try to establish some sort of income.

102.　The Plaintiff lost 16 years of hard work, business, reputation and credibility because of this antitrust injury caused by the Defendant.

103.　As authorized by Section 16 of the Clayton Act, the Plaintiff is entitled to injunctive relief i.e., restoration of status quo as it existed before 26 October 2019 till this claim is resolved by this Hon'ble Court which in effect means that the Plaintiff's professional certifications need to be restored back to validity by the Defendant.

104.　The Plaintiff is within the relevant Limitation Period under Section 4(b) of Clayton Act, the Plaintiff's injury happened on 26th October 2019.

105.　As authorized by Section 4 of the Clayton Act, this private plaintiff seeks damages from the Defendant for violations of anti-trust laws. Section 4 of the Clayton Act provides that the Plaintiff can recover three times (treble) of her total compensatory damages as well as costs incurred in the litigation.

**VIII.　　CLAIMS FOR RELIEF**

**COUNT ONE**

**VIOLATION OF SECTION 2 OF THE SHERMAN ACT**

**Monopoly Leveraging**

## 15 U.S.C. § 2

106.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

107.    As detailed above, the Defendant has monopoly power over the Plaintiff

108.    The Defendant has willfully and intentionally used its monopoly power over the Plaintiff to gain or attempt to gain or maintain monopoly power in the CMMI Licensing Business specifically by imposing trade restraints in different ways. The Defendant actions cannot be justified on the basis of any legitimate consumer benefit.

109.    The Defendant has leveraged monopoly power over the Plaintiff to restrict Plaintiff's ability to perform business in a legitimate manner and efficient manner.

110.    The Defendant has willfully acquired and maintained monopoly power by the exclusionary conduct detailed above, rather than through legitimate business acumen, skill, efficiency, or legitimate innovation.

111.    As a direct and proximate result of the Defendant's anticompetitive and monopolistic conduct, Plaintiff has been damaged by antitrust injuries inflicted by the Defendant that *inter alia* include the payment of supra-competitive prices for CMMI Professional Certification Fee to the Defendant, lack of availability of good and efficient service with respect to CMMI Professional Certification Service from the Defendant, restraint on the trade-output of the Plaintiff, obstruction in normal functioning of the Plaintiff due to anti-competitive policies, enforcement of anti-competitive agreements on the Plaintiff, unfair enrichment at the cost of the Plaintiff, exorbitant increase in prices of various items of CMMI Licensing Business, poor and stagnated CMMI product development, improper service delivery of CMMI Licensing Business, unilateral dissolution of Licensee Representative Body, deception and false claims

made with Plaintiff as the consumer, targeting of Plaintiff, unjustified revoking of CMMI Professional Certifications of Plaintiff without Cause on 26 October 2019, denial of market to the Plaintiff, exclusion of Plaintiff from the market and many such similar antitrust injuries arising out of abuse of dominance activities of Defendant and such antitrust injuries are continuing till now. Because of this reason, the Plaintiff has suffered concrete and particularized harm/injury of loss of business, loss of livelihood, mental harassment, loss of health, loss of property, loss of pets, loss of home, injury to family, injury due to targeting and discrimination because of the violations of antitrust laws by the Defendant.

## COUNT TWO

## VIOLATION OF SECTION 2 OF THE SHERMAN ACT

### Attempted Monopolization in the Alternative

### 15 U.S.C. § 2

112. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

113. As detailed above, the Defendant has monopoly power and is successfully maintaining monopoly power, carrying out abuse of dominance including the power to control prices and exclude competition.

114. The Defendant's anticompetitive conduct alleged herein has been directed at accomplishing the unlawful objective of controlling prices, and/or preventing competition in the CMMI Licensing Business. The Defendant's ongoing anticompetitive conduct presents the fact that the Defendant is abusing its dominance in the CMMI Licensing Business.

115. As a direct and proximate result of the Defendant's anticompetitive and monopolistic conduct, Plaintiff has been damaged by antitrust injuries inflicted by the Defendant that *inter alia* include the payment of supra-competitive prices for CMMI Professional

Certification Fee to the Defendant, lack of availability of good and efficient service with respect to CMMI Professional Certification Service from the Defendant, restraint on the trade-output of the Plaintiff, obstruction in normal functioning of the Plaintiff due to anti-competitive policies, enforcement of anti-competitive agreements on the Plaintiff, unfair enrichment at the cost of the Plaintiff, exorbitant increase in prices of various items of CMMI Licensing Business, poor and stagnated CMMI product development, improper service delivery of CMMI Licensing Business, unilateral dissolution of Licensee Representative Body, deception and false claims made with Plaintiff as the consumer, targeting of Plaintiff, unjustified revoking of CMMI Professional Certifications of Plaintiff without Cause on 26 October 2019, denial of market to the Plaintiff, exclusion of Plaintiff from the market and many such similar antitrust injuries arising out of abuse of dominance activities of Defendant and such antitrust injuries are continuing till now. Because of this reason, the Plaintiff has suffered concrete and particularized harm/injury of loss of business, loss of livelihood, mental harassment, loss of health, loss of property, loss of pets, loss of home, injury to family, injury due to targeting and discrimination because of the violations of antitrust laws by the Defendant.

## COUNT THREE

## VIOLATION OF SECTION 2 OF THE SHERMAN ACT

## VIOLATION OF SECTION 7 OF THE CLAYTON ACT

### Conspiracy to Monopolize

### 15 U.S.C. § 2

### 15 U.S.C. § 18

116.    Plaintiff incorporates and realleges, as though fully set forth herein, each and

every allegation set forth in the preceding paragraphs of this Complaint.

117. Beginning approximately in the Year 2016 and continues thereafter to present, Defendant, by and through its Officers, Directors, Employees, Agents or other Representatives, have explicitly or implicitly conspired with the Co-Conspirator to boycott other bidders from the acquisition and merger process, in order to acquire monopoly power in the CMMI Licensing Business, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 and Section 7 of the Clayton Act, 15 U.S.C. § 18.

118. Defendant and the Co-Conspirator conspired to cut-off access to other competitors to create a divested market instead of creating a monopoly in the CMMI Licensing Business.

119. Defendant has willfully, knowingly, and with specific intent to do so, conspired to monopolize repair the CMMI Licensing Business in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 and Section 7 of the Clayton Act, 15 U.S.C. § 18.

120. No plausible pro-competitive argument exists for the Defendant and the Co-Conspirator's refusal to create competitive options in the CMMI Licensing Business.

121. As a direct and proximate result of the Defendant's anticompetitive and monopolistic conduct, Plaintiff has been damaged by antitrust injuries inflicted by the Defendant that *inter alia* include the payment of supra-competitive prices for CMMI Professional Certification Fee to the Defendant, lack of availability of good and efficient service with respect to CMMI Professional Certification Service from the Defendant, restraint on the trade-output of the Plaintiff, obstruction in normal functioning of the Plaintiff due to anti-competitive policies, enforcement of anti-competitive agreements on the Plaintiff, unfair enrichment at the cost of the Plaintiff, exorbitant increase in prices of various items of CMMI Licensing Business, poor and stagnated CMMI product development, improper service delivery of CMMI Licensing

Business, unilateral dissolution of Licensee Representative Body, deception and false claims made with Plaintiff as the consumer, targeting of Plaintiff, unjustified revoking of CMMI Professional Certifications of Plaintiff without Cause on 26 October 2019, denial of market to the Plaintiff, exclusion of Plaintiff from the market and many such similar antitrust injuries arising out of abuse of dominance activities of Defendant and such antitrust injuries are continuing till now. Because of this reason, the Plaintiff has suffered concrete and particularized harm/injury of loss of business, loss of livelihood, mental harassment, loss of health, loss of property, loss of pets, loss of home, injury to family, injury due to targeting and discrimination because of the violations of antitrust laws by the Defendant.

## COUNT FOUR

## VIOLATION OF SECTION 2 OF THE SHERMAN ACT

## DECLARATORY AND INJUNCTIVE RELIEF

## 15 U.S.C. § 2

122.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

123.     Plaintiff seeks declaratory and injunctive relief under the federal antitrust laws.

124     Plaintiff's allegations described herein constitute violations of Section 2 of the Sherman Act.

125.     The Defendant has a scheme to restrain trade and is monopolizing the market.

126     There is, and was, no legitimate, non-pretextual, pro-competitive business justification for the conduct of the Defendant and the Co-Conspirator that outweighs its harmful effects.

127.     As a direct and proximate result of the Defendant and the Co-Conspirator's scheme to restrain trade and enforce anti-competitive policies, Plaintiff has suffered injury to her

36

business and her property and will continue to suffer economic injury and deprivation of the benefit of free and fair competition.

128.    The goal, purpose, and/or effect of the tying arrangement and anticompetitive scheme was to prevent competition or self-repair in order to continue charging supra-competitive prices for CMMI Licensing Services.

129.    Plaintiff has been injured in her business by reason of the Defendant's antitrust violations as alleged in this Complaint. Her injury consists of paying higher prices than she would have paid in the absence of those violations. These injuries will continue unhalted.

130.    Plaintiff, pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201(a), hereby seek a declaratory judgment that the Defendant's conduct constitutes a violation of Sections 2 of the Sherman Act and Section 7 of the Clayton Act.

131.    Plaintiff seeks equitable and injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and other applicable law, to correct the anticompetitive effects caused by Defendant's unlawful conduct.

## COUNT FIVE

## UNJUST ENRICHMENT

132.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

133.    The Defendant has benefitted from the monopoly profits on the sale of CMMI Licensing Services resulting from the unlawful and inequitable acts alleged in this Complaint.

134.    The Defendant's financial benefit resulting from unlawful and inequitable conduct is traceable to overpayments for CMMI Licensing Services.  Plaintiff has conferred upon the Defendant an economic benefit, in the nature of profits resulting from unlawful overcharges and monopoly profits to the economic detriment of Plaintiff.

135.    The economic benefit of overcharges and unlawful monopoly profits derived by the Defendant through Plaintiffs' payment of supra-competitive and artificially inflated prices for CMMI Licensing Business is a direct and proximate result of the Defendant's unlawful practices.

136.    The financial benefits derived by the Defendant rightfully belongs to Plaintiff, as Plaintiff has paid anticompetitive and monopolistic prices inuring to the benefit of the Defendant.

137.    It would be inequitable under unjust enrichment principles for the Defendant to be permitted to retain any of the overcharges for CMMI Licensing Business derived from the Defendant's unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

With aforesaid unfair enrichment practices, the Defendant's net income has gone up from USD 162,993 in the Year 2019 to USD 18,119,333 in the Year 2020 i.e., the Defendant's net income has increased by 11017% from the Year 2019 to Year 2020.

138.    The Defendant is aware of and appreciated the benefits bestowed upon it by Plaintiff.

139.    The Defendant should be compelled to disgorge in a fund for the benefit of Plaintiff all unlawful or inequitable proceeds it received.

140.    A constructive trust should be imposed upon all unlawful or inequitable sums received by the Defendant traceable to Plaintiff.

## IX.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff, respectfully requests judgement against the Defendant as follows:

141.    The Plaintiff prays for injunctive relief i.e., restoration/invocation of her CMMI Professional Certifications as they were existing prior to 26 October 2019 and imposition of restraint on all anti-competitive, antitrust, monopolization and abuse of dominance activities of the Defendant till the pendency of this Complaint in this Hon'ble Court.

142.    The Plaintiff prays for permanent relief i.e., restoration/invocation of her CMMI Professional Certifications, on permanent basis, as they were existing prior to 26 October 2019 and imposition of permanent restraint on all anti-competitive, antitrust, monopolization and abuse of dominance activities of the Defendant.

143.    The Defendant's unlawful conduct herein be adjudged and decreed in violation of Section 2 of the Sherman Act.

144.    The Defendant's unlawful conduct herein be adjudged and decreed in violation of Section 7 of the Clayton Act.

145.    The Plaintiff prays to recover damages, to the extent of USD 30,000,000 or above be allowed, and treble damages with interest, costs and reasonable legal expenses and a judgment in favor of Plaintiff be entered against Defendant in an amount to be trebled to the extent the laws permit.

146.    The Defendant, its Co-Conspirators, affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct alleged herein, or from engaging in other conduct having a similar purpose or effect, and from adopting or following any

practice, plan, program, or device having a similar purpose or effect.

147.    Plaintiff be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint.

148.    Plaintiff may have such other and further relief as the case may require and the Court may deem just and proper in addition to the ones prayed for above.

For such other and further relief as the Court deems just and proper.

Dated:  August 22, 2022              Respectfully

submitted,

By: *[s] Dr. Leigh Riley*

*Name: Dr. Leigh Riley*

*Address: 8277 Loganberry Ct,*

*Colorado Springs, CO 80927*

*Email: leigh@drleighriley.com*

*Phone: 703-973-0448*

## CERTIFICATE OF

## SERVICE

I certify that on August 22, 2022, a copy of a true and correct copy was served on

the Defendant's attorney by email pursuant to Federal Rules of Civil Procedure,

Rule 4(f):

Mr. Scott Mendeloff
Mr. Marc Trachtenberg
Mr. Gabriel Aizenberg
*[Attorneys for ISACA Inc (Defendant)]*
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400
Firm ID No. 36511
mendeloffs@gtlaw.com
trachtenbergm@gtlaw.com
aizenbergg@gtlaw.com

Respectfully submitted,

By: */s/ Dr. Leigh Riley*

*Name: Dr. Leigh Riley*

*Address: 8277 Loganberry Ct,*

*Colorado Springs, CO 80927*

*Email: leigh@drleighriley.com*

*Phone: 703-973-0448*