**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Leigh Riley<br><br>    Plaintiff,<br><br> v.<br><br>Information Systems Audit and Control<br>Association Inc.<br><br>    Defendant. | Case No.: 1:22-cv-04465<br>Hon. Virginia M. Kendall |

**MEMORANDUM OF LAW IN SUPPORT OF INFORMATION SYSTEMS**
**<u>AUDIT AND CONTROL ASSOCIATION INC.'S MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

SUMMARY OF FACTUAL ALLEGATIONS IN THE COMPLAINT ....................... 2

LEGAL STANDARD.................................................................................................... 3

ARGUMENT ................................................................................................................ 4

    I.    The Court Should Dismiss Riley's Antitrust Claims for Failure to Allege
    Antitrust Standing ........................................................................................... 4

        A.    Riley is not a competitor or consumer of ISACA and thus cannot
        satisfy the requirement that she is one that can most efficiently
        vindicate the purposes of the antitrust laws. .............................................. 5

        B.    The Court Should Dismiss Riley's Antitrust Claims for Failure to
        Allege Antitrust Injury or Anticompetitive Conduct ................................. 8

    II.    The Court Should Dismiss Riley's Antitrust Claims for Failing to Allege a
    Relevant Market............................................................................................ 11

        A.    Riley fails to allege a relevant market...................................................... 11

        B.    Riley fails to allege lack of economic substitutes for the ISACA
        service and thus cannot validly allege that ISACA has a monopoly
        over its own product or service. ................................................................ 12

        C.    Riley fails to meet the requirements of alleging antitrust violations
        based upon a single brand or service and thus impermissibly limits
        the relevant market to a single product/service that competes with
        potential substitutes................................................................................. 15

        D.    Riley does not adequately allege a per se violation of Section 1 of
        the Sherman Act....................................................................................... 17

    III.    The Court Should Dismiss Riley's Claim that ISACA Violated Section 8
    of the Clayton Act because Riley Fails to Allege the Elements of the
    Claim............................................................................................................. 19

    IV.    The Court Should Dismiss Riley's Claim for Unjust Enrichment....................... 20

    V.    The Court Should Dismiss Riley's Complaint with Prejudice. ........................... 21

CONCLUSION............................................................................................................ 22

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.D.M. Club Mgt. Sys., Inc. v. Gary Jonas Computing, Ltd.*,
    CIV.A.05-3943, 2006 WL 2689400 (D.N.J. Sept. 19, 2006) .............................................7, 13

*Agnew v. Nat'l Collegiate Athletic Ass'n*,
    683 F.3d 328 (7th Cir. 2012) .........................................................................................8, 17, 18

*Alarm Detection Sys., Inc. v. Orland Fire Protec. Dist.*,
    129 F. Supp. 3d 614 (N.D. Ill. 2015) .........................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................................4, 21

*Associated Gen. Contractors of California, Inc. v. California State Council of*
    *Carpenters*,
     459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983)...........................................................7

*Atl. Richfield Co. v. USA Petro. Co.*,
    495 U.S. 328, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990).........................................................5

*BCB Anesthesia Care, Ltd. v. Passavant Mem'l Area Hosp. Ass'n*,
    36 F.3d 664 (7th Cir. 1994) ......................................................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................1, 3, 4, 7, 13

*Biers v. Washington State Liquor & Cannabis Bd.*,
    No. C15-1518JLR, 2016 WL 3079025 (W.D. Wash. June 1, 2016)......................................20

*Blue Shield of Virginia v. McCready*,
    457 U.S. 465 (1982)...................................................................................................................7

*Business Electronics Corp. v. Sharp Electronics Corp.*,
    485 U.S. 717, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988)..........................................................18

*Cargill, Inc. v. Monfort of Colo., Inc.*,
    479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986)..............................................................5

*Chicago Studio Rental, Inc. v. Illinois Dept. of Com.*,
    940 F.3d 971 (7th Cir. 2019) .....................................................................................................8

*Colsa Corp. v. Martin Marietta Servs., Inc.*,
    133 F.3d 853 (11th Cir. 1998) .................................................................................................10

*Ctr. Video Indus. Co. v. United Media, Inc.*,
    995 F.2d 735 (7th Cir. 1993) ...................................................................................................18

*Eastman Kodak Co. v. Image Technical Servs., Inc.*,
    504 U.S. 451 (1992)......................................................................................................8, 16, 17

ii

*Egwuenu v. Charles Schwab & Co.*,
  834 Fed. Appx. 245 (7th Cir. 2021) ................................................................4

*Ekbatani v. Cmty. Care Health Network, LLC*,
  No. 21-12322, 2022 WL 31793 (11th Cir. Jan. 4, 2022) ..................................4

*Elliott v. United Ctr.*,
  126 F.3d 1003 (7th Cir. 1997) ...................................................................12, 13

*First Commodity Traders, Inc. v. Heinold Commodities, Inc.*,
  766 F.2d 1007 (7th Cir.1985) ........................................................................21

*Graham v. Midland Mortg. Co.*,
  406 F. Supp. 2d 948 (N.D. Ill. 2005) .............................................................21

*Gregory Mktg. Corp. v. Wakefern Food Corp.*,
  787 F.2d 92 (3d Cir.1986) ................................................................................7

*Grudkowski v. Foremost Ins. Co.*,
  556 F. App'x 165 (3d Cir. 2014) ...................................................................21

*Internal Med. Nephrology, Inc. v. Bio-Med. Applications of Indiana, Inc.*,
  218CV00506JRSDLP, 2019 WL 4688712 (S.D. Ind. Sept. 26, 2019) ............6

*Intl. Equip. Trading, Ltd. v. AB SCIEX LLC*,
  13 C 1129, 2013 WL 4599903 (N.D. Ill. Aug. 29, 2013) ................8, 12, 14, 16

*Jacobs v. Tempur–Pedic Int'l, Inc.*,
  626 F.3d 1327 (11th Cir.2010) .......................................................................14

*James Cape & Sons, Co. v. PCC Constr. Co.*,
  453 F.3d 396 (7th Cir.2006) ............................................................................9

*Khan v. Presence Chicago Hosps. Network*,
  21-2159, 2022 WL 42731 (7th Cir. Jan. 5, 2022) ......................................8, 18

*Khan v. Presence St. Mary & St. Elizabeth Hosps.*,
  No. 20 C 3819, 2020 WL 6750535 (N.D. Ill. Nov. 17, 2020) ........................17

*Kochert v. Greater Lafayette Health Services, Inc.*,
  463 F.3d 710 (7th Cir. 2006) ...........................................................................8

*Lab. One, Inc. v. Staff Mgt. Sols., LLC*,
  17 C 7580, 2019 WL 3554412 (N.D. Ill. Aug. 5, 2019) ................................10

*Las Vegas Sun, Inc. v. Summa Corp.*,
  610 F.2d 614 (9th Cir. 1979) ..........................................................................20

*Levitin v. N.W. Community Hosp.*,
  64 F. Supp. 3d 1107 (N.D. Ill. 2014) ...............................................................9

*MacIntyre v. Moore*,
  335 F. Supp. 3d 402 (W.D.N.Y. 2018) ...........................................................21

*Mann v. Vogel*,
  707 F.3d 872 (7th Cir. 2013) ............................................................................4

*Maui Jim, Inc. v. SmartBuy Guru Enterprises*,
386 F. Supp. 3d 926 (N.D. Ill. 2019) ..............................................................14, 15

*McCullough v. Zimmer, Inc.*,
08CV1123, 2009 WL 775402 (W.D. Pa. Mar. 18, 2009), *aff'd*, 382 Fed. Appx.
225 (3d Cir. 2010)..........................................................................................7, 13

*McCullough v. Zimmer, Inc.*,
382 Fed. Appx. 225 (3d Cir. 2010).........................................................................6

*McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*,
937 F.3d 1056 (7th Cir. 2019) ...........................................................4, 5, 7, 16

*NCAA v. Bd. of Regents*,
468 U.S. 85, 104 S.Ct. 2948, 82 L.Ed.2d 70 (1984)...........................................18

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*,
629 F.3d 697 (7th Cir. 2011) ...............................................................................19

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
124 F.3d 430 (3d Cir. 1997)..................................................................................15

*Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*,
87 F. Supp. 3d 874 (N.D. Ill. 2015) ................................................................12, 16

*S.W. Suburban Bd. of Realtors, Inc. v. Beverly Area Plan. Ass'n*,
830 F.2d 1374 (7th Cir. 1987) ................................................................................6

*Sandee's Catering v. Agri Stats, Inc.*,
20 C 2295, 2020 WL 6273477 (N.D. Ill. Oct. 26, 2020).....................................20

*Serfecz v. Jewel Food Stores, Inc.*,
67 F.3d 591 (7th Cir. 1995) ....................................................................................6

*Serpa Corp. v. McWane, Inc.*,
199 F.3d 6 (1st Cir. 1999)....................................................................................6, 7

*Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*,
950 F.3d 911 (7th Cir. 2020) ..........................................................1, 2, 11, 21, 22

*Siva v. Am. Bd. of Radiology*,
38 F.4th 569 (7th Cir. 2022) ...............................................................................1, 4

*Tamburo v. Dworkin*,
601 F.3d 693 (7th Cir. 2010) ..................................................................................4

*Todd v. Exxon Corp.*,
275 F.3d 191 (2d Cir. 2001)..................................................................................12

*United States Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*,
390 F. Supp. 3d 892 (N.D. Ill. 2019) ....................................................................15

*United States v. E. I. du Pont de Nemours & Co.*,
351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956)......................................11, 12

*United States v. E.I. du Pont de Nemours & Co.*,
353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957)...........................................11

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398, 124 S.Ct. 872 (2004) .............................................................................18

*Will v. Comprehensive Accounting Corp.*,
   776 F.2d 665 (7th Cir. 1985) .........................................................................................15

**Statutes**

15 U.S.C.A. § 15b .................................................................................................................18

15 U.S.C. § 19 ......................................................................................................................19

15 U.S.C. § 19(a)(1) .............................................................................................................19

15 U.S.C. § 19(a)(2) .............................................................................................................19

## INTRODUCTION

Pro se plaintiff Riley, a former contractor to defendant Information Systems Audit and Control Association Inc. ("ISACA"), is upset that ISACA terminated their at-will contract in 2019. Seeking an astronomical $128M in damages *plus* treble damages with interest, costs, and reasonable legal expenses,[1] Riley's amended complaint (Dkt. No. 45) is her second attempt to assert antitrust and unjust enrichment claims against defendant ISACA. As Riley's core allegations remain unchanged, her amended complaint suffers from the same fatal flaws as did the original, despite the fact that ISACA's first motion to dismiss painstakingly explained why the allegations do not make out an antitrust claim. Riley's complaint continues to reflect "misunderstandings about foundational principles of antitrust law." *Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 916 (7th Cir. 2020).[2] Among other things, Riley continues to fail to properly allege antitrust standing, anticompetitive conduct, or a relevant market, each of which is essential to her antitrust claims. Riley's unjust enrichment claim fares no better as it is legally barred because a contract between Riley and ISACA governs their relationship and fails to allege what law governs her unjust enrichment claim.

---

[1] *See* First Amend. Compl. at *e.g.,* ¶¶ 180. Going forward, ISACA cites to the paragraphs in the amended complaint as "¶__". The Supreme Court and the Seventh Circuit recognize the importance of careful attention to in the antitrust context of avoiding 'the potentially enormous expense of [antitrust] discovery in cases with no reasonably founded hope'" *Siva v. Am. Bd. of Radiology*, 38 F.4th 569, 575 (7th Cir. 2022) (quoting *Twombly*, 550 U.S. at 570) (brackets in original). Given the weakness of Riley's antitrust claims, the enormous damages sought ($128M plus trebling and attorney's fees) and the extreme dubiousness that such damages could possibly arise from the operations of a single individual, it is quite apparent that Plaintiff seeks to take advantage of precisely the risk noted in *Siva* to extract a recovery from ISACA.

[2] Among other things, Riley still repeatedly refers to the non-U.S. antitrust concept of "abuse of dominance," still alleges the legal impossibility that ISACA has a monopoly over her personally, and still references wholly inapplicable legal and factual allegations copied-and-pasted from an entirely unrelated antitrust complaint from another district, i.e., a tying arrangement to prevent "self-repair," an allegation concerning self-repair market.

1

It is now abundantly clear that any further amendments would be futile, and the Court should dismiss Riley's amended complaint with prejudice. *See Sharif Pharm., Inc.*, 950 F.3d at 919 (affirming district court's dismissal of federal antitrust claims with prejudice without allowing plaintiff to amend complaint).

## SUMMARY OF FACTUAL ALLEGATIONS IN THE COMPLAINT

ISACA owns the Capability Maturity Model Integration ("CMMI Model"), a "best-practices" model that assesses a company's "CMMI Maturity Level Rating."[3] *See* ¶¶ 1, 8, 10. In 2016, ISACA acquired the "CMMI Certification Business," which includes the CMMI Model, from Carnegie Mellon University ("CMU") and the Software Engineering Institute ("SEI"). Riley alleges that ISACA "completed its integration and merger on 27 May 2020." *See* ¶¶ 9, 10, 25.

ISACA's business is to sell to customer companies the service of providing an appraisal of their operations under the CMMI Model. ¶¶ 8, 10-11. Organizations, including government agencies, may consider a company's CMMI Maturity Level Rating when deciding whether to hire that company. ¶¶ 93-94. The owners of the CMMI Model – ISACA and its predecessors – do not conduct appraisals of companies to assess their CMMI Maturity Level Rating. Instead, third-party "Certified Lead Appraisers," such as Riley, conduct CMMI Model appraisals. ¶ 8. The appraisals performed by the certified lead appraisers are later vetted by ISACA for compliance with its standards before being accepted. *See* Compl., Exhibit G at ¶ 7 (contract between Riley and ISACA's predecessor CMMI).

From 2004 until 2019, plaintiff Riley, pursuant to her contract with ISACA and ISACA's predecessors, was a "Certified Lead Appraiser" who conducted CMMI appraisals on third-party

---

[3] For purposes of this motion to dismiss, ISACA assumes, as it must, that well-pled allegations in the complaint are true.

companies. ¶ 1. As with other certified lead appraisers, Riley's contract with ISACA (inherited from ISACA's predecessor) provided that after Riley performed an appraisal, ISACA would review and vet the appraisal report for compliance with its "models, methods, policies, guidelines and COPC [Code of Professional Conduct]." Compl. Exhibit G at ¶ 7. In its "sole discretion," it was <u>ISACA</u> that made the final decision as to whether an appraisal was accepted or rejected. *Id*.

Riley does not and cannot allege that she is a customer purchasing best-practices process appraisals – the companies being appraised makes that purchase. Nor does or can she allege she is a competitor of ISACA providing potential alternatives to ISACA's best-practice appraisals. Rather, Riley repeatedly alleges that she was ISACA's contractor. Riley contracted to assist ISACA by performing appraisals of the end customer using ISACA's CMMI Model. Put another way, Riley was an intermediary between ISACA and its customers. *See* ¶¶ 8, 21, 64-66.

ISACA terminated its contract with Riley in October 2019 pursuant to their contract's termination without cause provision. ¶¶ 98, 107, 125. Riley alleges that ISACA believes it in fact had cause to do so. ¶ 107. Three years after being terminated, Riley brings this lawsuit against ISACA, purporting to advance claims of violations of the Clayton Act, Sherman Act, and for unjust enrichment. ¶¶ 128-173. Nowhere in the complaint does Riley allege that that ISACA has a monopoly in the best-practices appraisal market or that ISACA has injured such a market. Rather, Riley only alleges the far more narrow claim that ISACA has a monopoly over the "CMMI Certification Business" – wholly owned by ISACA – and that she was injured by ISACA, including by ISACA's 2019 termination of her services. *See* ¶¶ 4, 9, 10, 22.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "Threadbare recitals

3

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." *Tamburo v. Dworkin*, 601 F.3d 693, 699 (7th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 662).

Stringent application of the plausibility standard is "particularly important in the antitrust context so as to avoid 'the potentially enormous expense of [antitrust] discovery in cases with no reasonably founded hope'" *Siva*, 38 F.4th at 575 (7th Cir. 2022) (quoting *Twombly*, 550 U.S. at 570) (brackets in original). While individuals have the right to proceed pro se even in areas as abstruse as antitrust and pro se complaints are to be liberally construed, "pro se litigants are not excused from compliance with procedural rules." *Egwuenu v. Charles Schwab & Co.*, 834 Fed. Appx. 245, 246 (7th Cir. 2021) (affirming dismissal of complaint for failure to allege plausible claims and noting that plaintiff's "pro se status does not cure this fatal defect….").

## ARGUMENT

**I.     The Court Should Dismiss Riley's Antitrust Claims for Failure to Allege Antitrust Standing**

Riley alleges that ISACA violated Sections 1 and 2 Sherman Antitrust Act and Section 7 of the Clayton Act, but fatally fails to adequately allege that she has antitrust standing, a necessary prerequisite to the survival of each of these claims. *See McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*, 937 F.3d 1056, 1066 (7th Cir. 2019) (antitrust standing required to bring claims under the Sherman Act).[4]

---

[4] *See also Ekbatani v. Cmty. Care Health Network, LLC*, No. 21-12322, 2022 WL 31793, at *1 (11th Cir. Jan. 4, 2022) (affirming dismissal of Clayton Section 7 claim because plaintiff lacked antitrust standing).

4

The Seventh Circuit has held that for a private plaintiff like Riley to possess antitrust standing she must (i) be among those "who can most efficiently vindicate the purposes of the antitrust laws" and (ii) have suffered an antitrust injury. *McGarry & McGarry, LLC*, 937 F.3d at 1065.[5] *Alarm Detection Sys., Inc. v. Orland Fire Protec. Dist.*, 129 F. Supp. 3d 614, 632 (N.D. Ill. 2015) ("'Antitrust injury' is also an element of a claim under Section 7 of the Clayton Act.") (citing *Cargill, Inc. v. Monfort of Colo., Inc.,* 479 U.S. 104, 122, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986)).

    A.    <u>Riley is not a competitor or consumer of ISACA and thus cannot satisfy the requirement that she is one that can most efficiently vindicate the purposes of the antitrust laws.</u>

The Seventh Circuit presumes that it is the "***competitors*** and ***consumers*** in the relevant market" who are in a position to efficiently vindicate the antitrust laws." *McGarry & McGarry, LLC*, 937 F.3d at 1065. Because Riley is neither a consumer nor a competitor, she does not have standing to bring antitrust claims.

As addressed in the opening facts, *supra* at pp. 2-3, Riley was neither a competitor of ISACA nor a consumer of ISACA's service. Riley specifically and repeatedly alleges that she was a "Certified Lead Appraiser" who contracted to assist ISACA by performing appraisals of the end customer using ISACA's CMMI Model. *See* ¶¶ 1, 8, 21, 64. Riley was unquestionably an intermediary between ISACA and the end customer. *See* ¶¶ 64-70. In the antitrust context, consumers and competitors are the parties that either purchase (consumer) or sell (competitor)

---

[5] Though Riley alleges that the "per se" rule under the Sherman Act should apply in this case, *see infra* at Section II.D, she must nonetheless adequately allege antitrust standing. *See Atl. Richfield Co. v. USA Petro. Co.,* 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990) (noting that a showing of "antitrust standing" is required in both *per se* and Rule of Reason cases); *McGarry & McGarry, LLC*, 937 F.3d at 1065 (affirming dismissal of alleged *per se* violation of the Sherman Antitrust Act because plaintiff failed to allege antitrust standing). In any event, Riley did not adequately allege a per se violation, as explained in Section II.D, *infra*.

the defendant's product or service or an interchangeable version of that product or service. *See S.W. Suburban Bd. of Realtors, Inc. v. Beverly Area Plan. Ass'n*, 830 F.2d 1374, 1376, 1379 (7th Cir. 1987) (plaintiff trade association was neither competitor nor consumer in "the provision of real estate brokerage service" the market because plaintiff "does not supply real estate brokerage services nor does it purchase such services. Rather it merely supplies firms in the relevant market with a computerized listing service."); *Internal Med. Nephrology, Inc. v. Bio-Med. Applications of Indiana, Inc.*, 218CV00506JRSDLP, 2019 WL 4688712, at *3 (S.D. Ind. Sept. 26, 2019) (no antitrust standing because "Plaintiff is neither competitor nor consumer in the relevant market: it does not purchase or sell dialysis services."). In contracting with ISACA to be certified to perform appraisals (later vetted by ISACA) on consumers seeking to determine their CMMI Maturity Level, Riley is at best an intermediary between ISACA and its customers.

Intermediaries between a producer and a consumer cannot bring antitrust claims. *See Serfecz v. Jewel Food Stores, Inc.*, 67 F.3d 591, 598 (7th Cir. 1995) (affirming dismissal of antitrust claim where plaintiff was neither consumer or competitor and noting, "Suppliers to direct market participants typically cannot seek recovery under the antitrust laws because their injuries are too secondary and indirect to be considered 'antitrust injuries.'"); *McCullough v. Zimmer, Inc.*, 382 Fed. Appx. 225, 229 (3d Cir. 2010) ("[T]he balance of their allegations established the couple only as commission-based sales representatives who did business with competitors and consumers in the market for surgical orthopedic devices, not as competitors or consumers themselves. **As mere intermediaries in the supply chain, the McCulloughs suffered no cognizable antitrust injury as a result of Defendants' alleged anticompetitive conduct**."); *Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 11 (1st Cir. 1999) ("[A] commercial intermediary, such as a distributor or sales representative, generally lacks standing because its

antitrust injury is too remote."); *Gregory Mktg. Corp. v. Wakefern Food Corp.*, 787 F.2d 92, 96–97 (3d Cir.1986) (broker was neither consumer nor competitor in juice market).[6]

The fact that Riley refers to herself as a "consumer" and a "competitor" does not make it so. *See Twombly*, 550 U.S. at 555 (plaintiff must plead more than mere "labels and conclusions"); *McCullough v. Zimmer, Inc.*, 08CV1123, 2009 WL 775402, at *7 (W.D. Pa. Mar. 18, 2009) (rejecting commissioned sales representatives' attempt to characterize themselves as consumers or competitors for the purposes of antitrust standing because they were simply an intermediary to the end-users of the product) (dismissing antitrust claim), *aff'd*, 382 Fed. Appx. 225 (3d Cir. 2010); *A.D.M. Club Mgt. Sys., Inc. v. Gary Jonas Computing, Ltd.*, CIV.A.05-3943, 2006 WL 2689400, at *4 (D.N.J. Sept. 19, 2006) (dismissing antitrust claims for lack of antitrust standing where plaintiffs alleged that defendants' authorized representatives – who purchased defendants' software and then sold it to private membership clubs – were "consumers and/or competitors" of defendants because defendants' authorized representatives were "simply the intermediary through which [defendant] distributed its product.").

Because Riley is neither ISACA's consumer nor competitor, she cannot efficiently vindicate the antitrust laws and does not have antitrust standing.

---

[6] In *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 484 (1982), the Supreme Court recognized a "narrow exception" to this general rule, which is inapplicable here. The exception applies to individuals whose injuries were "inextricably intertwined with the injury the conspirators sought to inflict" on the market. In *Associated Gen. Contractors of Cal.*, 459 U.S. 519, 529 n.19 (1983), the Supreme Court explained that what mattered was that the plaintiff was a participant **in the market targeted by the alleged conspiracy** and was "directly harmed by the defendants' unlawful conduct." *See also McGarry & McGarry, LLC*, 937 F.3d at 1066 (same). Riley attempts to seize upon this by alleging – without any supporting factual allegations – that her injury is "inextricably intertwined with the antitrust" violations. ¶¶ 3, 116. Riley does not allege an actual market in which injuries allegedly arose (alleges that ISACA has a monopoly over its own product) and does not adequately allege that she is a consumer or competitor in any valid market. Injuries that flow from termination of distributorship agreement rather than from any anticompetitive activity on the market do not state a claim. *See Serpa Corp.*, 199 F.3d at 12

B.    <u>The Court Should Dismiss Riley's Antitrust Claims for Failure to Allege Antitrust
Injury or Anticompetitive Conduct</u>

Related to Riley's lack of antitrust standing, Riley also fails to properly allege that

ISACA caused an "antitrust injury" or engaged in anticompetitive conduct. The gravamen of

Riley's complaint is that she was ISACA's contractor and that she was "injured" by virtue of her

contractual relationship with ISACA, including by ISACA's decision to terminate her contract.

This, however, does not allege an antitrust injury.

To show an antitrust injury, a plaintiff must "demonstrate that her claimed injuries are of

the type the antitrust laws were intended to prevent and reflect the anticompetitive effect of

either the violation or of anticompetitive acts made possible by the violation." *Kochert v. Greater

Lafayette Health Services, Inc.*, 463 F.3d 710, 716 (7th Cir. 2006) (internal quotes omitted); *see

also Intl. Equip. Trading, Ltd. v. AB SCIEX LLC*, 13 C 1129, 2013 WL 4599903, at *5 (N.D. Ill.

Aug. 29, 2013) ("predatory and anti-competitive conduct [is] 'the use of monopoly power 'to

foreclose competition, to gain a competitive advantage, or to destroy a competitor.'")

(*quoting Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 482-83 (1992)).

Further, a plaintiff must allege an antitrust injury to a relevant market, not just to herself. *See

Khan v. Presence Chicago Hosps. Network*, 21-2159, 2022 WL 42731, at *2 (7th Cir. Jan. 5,

2022) ("to state a claim under the Sherman Act, Khan had to allege not only an injury to himself,

but also 'an injury to the market.'") (affirming dismissal of antitrust claims) (quoting *Agnew v.

Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012)).

*Injury to Riley and not a relevant market*. An individual, Riley alleges injuries that are

personal *to her*. Riley asserts that ISACA's alleged antitrust violations caused her "loss of

business, loss of livelihood, loss of income, mental anguish, loss of health, loss of property, [and]

loss of home" ¶ 4. These alleged personal injuries are not the types of injuries that the antitrust

laws were intended to prevent. *See Chicago Studio Rental, Inc. v. Illinois Dept. of Com.*, 940 F.3d 971, 978 (7th Cir. 2019) (affirming dismissal of antitrust claims where, "at best," plaintiff "pleaded an injury to itself, not an anticompetitive injury to the market"); *see also Levitin v. N.W. Community Hosp.*, 64 F. Supp. 3d 1107, 1122 (N.D. Ill. 2014) (staffing decisions without an impact on the relevant market cannot result in antitrust injury) (citing *BCB Anesthesia Care, Ltd. v. Passavant Mem'l Area Hosp. Ass'n*, 36 F.3d 664, 669 (7th Cir. 1994)).

Elevating form over substance, Riley attempts to use terms and phrases sounding in antitrust principles – such as "restraint on trade-output," "refusal to deal," and "denial of market" in relation to impact upon herself – but does not allege antitrust injuries or anticompetitive conduct. Riley alleges, rather, that she was injured when ISACA terminated her at will contract as a CMMI Certified Lead Appraiser. For example, Riley's "restraint on output" allegation is that ISACA "imposed a trade restraint" on her by limiting the number of "CMMI Appraisals" that she could perform in a year pursuant to their contractual relationship and this has "created a huge business loss to Plaintiff Riley and other CMMI Certified Lead Appraisers." ¶¶ 64, 66. Likewise, Riley's refusal to deal and denial of market allegations relate to ISACA's termination of her contract pursuant to the termination provision of her contract, *i.e.,* Riley complains that termination was ISACA's refusal to deal with her and its denial of her access to perform certifications. *See* ¶¶ 1; 105, 117. These arguments would cause the invocation of any run-of-the-mill termination at will provision into antitrust violations. These are emphatically not allegations of reduced output or raise consumer prices ***in the relevant market***. *See Levitin*, 64 F. Supp. 3d at 1121 ("[T]he 'injury must involve loss that comes from acts that reduce output or raise prices to consumers' in the ***relevant market***.") (quoting *James Cape & Sons, Co. v. PCC Constr. Co.*, 453 F.3d 396, 399 (7th Cir. 2006) (internal brackets omitted)).

9

Indeed, Riley's catalogue of alleged antitrust injuries derives from the contract. In Paragraph 117 of her amended complaint, Riley's alleges that her "antitrust injuries" heavily tie into her ISACA contract: (i) "restraint on the trade-output of the Plaintiff" and "obstruction in normal functioning" amount to restrained activity under her ISACA contract (¶¶ 64-70); (ii) "enforcement of anti-competitive agreements" directly references enforcement of the ISACA contract (¶ 66, 96); (iii) "unjustified and improper revoking of CMMI professional certifications" and "denial of market to the Plaintiff" each reference ISACA's termination of the contract, for the "market" Riley refers to is her ability to provide appraisal services under the ISACA (¶ 105); and (iv) "increase in the prices of distinct items of the CMMI Certification Business" are price increases under the ISACA contract. (¶ 71, Compl., Exhibit C) Indeed, even Riley's requested injunctive relief focuses upon reinstatement of the contract: "restoration of all her CMMI Professional Certifications as they were existing prior to 26 October 2019." ¶ 174.

A contracting party's complaints about its contractual relationship, including the termination of that relationship, however, cannot constitute antitrust injury or evidence of anticompetitive acts. *See Lab. One, Inc. v. Staff Mgt. Sols., LLC*, 17 C 7580, 2019 WL 3554412, at *4 (N.D. Ill. Aug. 5, 2019) (dismissing antitrust claim because allegation that contractor "terminated or otherwise sabotaged the parties' contract" did not plead anticompetitive conduct and plaintiff failed to plead an antitrust injury); *Colsa Corp. v. Martin Marietta Servs., Inc.*, 133 F.3d 853, 856 (11th Cir. 1998) (where defendant terminated subcontract with plaintiff for services under a separate contract between defendant and a third party, defendant's conduct could not "be characterized as anticompetitive" and plaintiff's rights against defendant, if any, "sound[ed] in contract").

10

*No anticompetitive conduct because no plausible allegation of injury to the market alleged*. Even apart from the fact that a contract termination alone cannot be the basis of anticompetitive conduct, Riley does not and cannot plausibly allege an antitrust injury to the relevant market she alleges, i.e., the global market for the services at issue. Riley has not alleged any means by which the alleged actions of ISACA in terminating her – a single certified appraiser – could in any way have injured a global market involving ISACA's services.

Because Riley did not allege antitrust injury or anticompetitive conduct, she did not allege antitrust standing and her antitrust claims must be dismissed.

## II. The Court Should Dismiss Riley's Antitrust Claims for Failing to Allege a Relevant Market.

### A. Riley fails to allege a relevant market

To allege a violation of Section 7 of the Clayton Act, Section 1 of the Sherman Act or Section 2 (monopolization) of the Sherman Act, a plaintiff must properly allege a "relevant market." *See Sharif Pharm., Inc.*, 950 F.3d at 916 (relevant market required to allege Sherman Section 1 and Section 2 claims); *United States v. E.I. du Pont de Nemours & Co*., 353 U.S. 586, 593, 77 S.Ct. 872, 877, 1 L.Ed.2d 1057 (1957) (relevant market required to allege Clayton Section 7 claims). For antitrust purposes, a relevant market consists of (i) a geographic market and (ii) a product market comprising commodities or services "reasonably interchangeable by consumers for the same purposes." *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 395, 76 S.Ct. 994, 100 L.Ed. 1264 (1956).

*Geographic market*. Riley alleges a global geographic market. *See* ¶ 24 ("Defendant ISACA, being a monopoly in the CMMI Certification Business controls all this market in the world."); ¶ 92 ("Defendant ISACA . . . is a monopoly, in the CMMI Certification Business throughout the world.").

11

*Product market*. Riley, however, wholly fails to allege a relevant product market. Riley fails to do so for two, related reasons. First, instead of alleging an actual market, Riley alleges that ISACA has monopoly power over its ***own*** product/service (*see* ¶¶ 9, 10, 22) – a proposition that the Seventh Circuit has explicitly rejected in almost all circumstances. *Elliott v. United Ctr.*, 126 F.3d 1003, 1005 (7th Cir. 1997). Second, courts dismiss antitrust claims that limit the relevant market to a "'single brand, franchise, institution, or comparable entity that competes with potential substitutes.'" *Intl. Equip. Trading, Ltd.*, 13 C 1129, 2013 WL 4599903 at *4 (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001)). Riley specifically admits that this is the case here.

    B.    <u>Riley fails to allege lack of economic substitutes for the ISACA service and thus cannot validly allege that ISACA has a monopoly over its own product or service.</u>

As she did in the original complaint, Riley again improperly attempts to allege that ISACA exercised monopoly power over its own product/service because she alleges that economic substitutes do exist for ISACA's product/service. Riley fails to allege the opposite, i.e., that no economic substitute exists for ISACA's product/service exists. She thus cannot show a valid relevant market. Pursuant to well-established Supreme Court law, a product or brand has "economic substitutes" where there is reasonable interchangeability of the product or brand with another. *E. I. du Pont de Nemours & Co.*, 351 U.S. at 404; *see also Fishman v. Est. of Wirtz*, 807 F.2d 520, 531 (7th Cir. 1986) ("A relevant market is comprised of those 'commodities reasonably interchangeable by consumers for the same purposes....'") (quoting *E. I. du Pont de Nemours & Co.*, 351 U.S. at 395). The Seventh Circuit has "explicitly rejected" the "proposition that a firm can be said to have monopoly power in its own product, absent proof that the product itself has no economic substitutes." *Elliott*, 126 F.3d at 1005; *see also Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*, 87 F. Supp. 3d 874, 888 (N.D. Ill. 2015) (court rules that

even aside from Major League Baseball's broad antitrust exemption, plaintiffs' antitrust claims fail because they assail what the Cubs did with their own product: "The problem with the Rooftops' position is that the Cubs are not limited by the antitrust laws with respect to what they do with and how they distribute their own product") (citing *Elliot*, 126 F.3d at 1005).

Riley alleges that ISACA both: (i) owns the CMMI Certification Business; and (ii) "has a monopoly in the CMMI Certification Business." ¶¶ 9, 10, 22. But Riley does not *plausibly* allege that the CMMI Certification Business "has no economic substitutes." *Elliot*, 126 F.3d at 1005. Riley's amended complaint attempts to evade her prior error on this score by stating in a conclusory manner that "ISACA's CMMI Certification Business is unique, with no substitutes." The law in the U.S. is clear that bare assertion of this sort cannot save her claim. *See Twombly*, 550 U.S. at 555 (plaintiff must plead more than mere "labels and conclusions"); *McCullough*, 08CV1123, 2009 WL 775402 at *7 (dismissing antitrust claim, court rejected plaintiff's attempt to characterize themselves as consumers or competitors when the balance of the complaint made it clear that they were neither); *A.D.M. Club Mgt. Sys., Inc.*, CIV.A.05-3943, 2006 WL 2689400 at *4 (same).

First, Riley's own allegations belie her assertion that ISACA's product/service has no substitutes. Riley affirmatively alleges that the CMMI Licensing Business *does* in fact have economic substitutes. In her complaint, Riley repeatedly characterizes ISACA as a "certification organization" or "certification body" (which she treats synonymously). *See* ¶¶ 89, 92. (". . . [D]espite acting as a certification organization . . . ISACA has refused to bring its CMMI Certification Business under any kind of accreditation/regulatory control . . . ."); ("It [ISACA] is trying to act as both an Accreditation Board and a Certification Body."). Riley then compares ISACA unfavorably to *other* certification organizations. *See* ¶ 92 (alleging that unlike other

13

certification bodies, ISACA "does not follow any such rules of CBs . . . ."); *see also* Compl.

Exhibit E (table placing ISACA among its competitors/alternatives). Given that Riley admits that

ISACA as a certification organization has numerous substitutes, Riley's antitrust claims must be

dismissed. *See Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 386 F. Supp. 3d 926, 946 (N.D. Ill.

2019) (dismissing Sherman antitrust claim where plaintiff alleged competitive alternatives to

Maui Jim sunglasses) (citing to *Intl. Equip. Trading, Ltd.*, 2013 WL 4599903 at *4); *Intl. Equip.*

*Trading, Ltd.*, 2013 WL 4599903 at *4 (dismissing Sherman antitrust claim where plaintiff

alleged that there were other competing manufacturers of mass spectrometry systems).

Apart from her admissions, Riley also fails to allege any facts supporting her conclusory

assertion that the CMMI Certification Business is unique and has no economic substitutes. For

example, Riley fails to allege any cross-elasticities of supply or demand concerning the CMMI

Certification Business, which could tend to show whether the business is unique. *See Maui Jim,*

*Inc.*, 386 F. Supp. 3d at 945 ("Although a single-brand market may exist, SBG has not pleaded

facts demonstrating that Maui Jim's sunglasses are unique and cannot be substituted with other

manufacturers' sunglasses. SBG's minimal allegations say nothing regarding cross-elasticities of

supply or demand."); *Intl. Equip. Trading, Ltd.*, 2013 WL 4599903 at *4 (dismissing Sherman

claim where plaintiff failed to "allege any facts to support [its] narrow product market definition"

and noting that there were "no allegations regarding cross-elasticities of supply or demand").[7]

Additionally, Riley failed to put forward any reasons why another entity could not design and

market a similar best-practices appraisal program. *See Will v. Comprehensive Accounting Corp.*,

776 F.2d 665, 672 (7th Cir. 1985) ("If rivals may design and offer a similar package for a similar

---

[7] *See also Jacobs v. Tempur–Pedic Int'l, Inc.,* 626 F.3d 1327, 1337-38 & n.13 (11th Cir.2010) ("The cross-elasticity of demand measures the change in the quantity demanded by consumers of one product relative to the change in price of another.").

cost, there is no barrier, and without a barrier there is no market power."); *United States Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 908 (N.D. Ill. 2019) (dismissing a Sherman antitrust claim where another entity could "design and offer a similar certification"). As the Third Circuit has explained: "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.,* 124 F.3d 430, 436 (3d Cir. 1997).[8]

C.    Riley fails to meet the requirements of alleging antitrust violations based upon a single brand or service and thus impermissibly limits the relevant market to a single product/service that competes with potential substitutes.

Related to the argument that a party cannot have a monopoly over its own product/service, Riley's Sherman Section 1 and 2 claims and her Clayton Section 7 claims should be dismissed because Riley fails to meet the requirements to assert a claim of a relevant limited to a single product – the CMMI Certification Business. ¶ 23 ("The relevant market in which Defendant ISACA is a monopoly is called the CMMI Certification Business."). A court should dismiss an antitrust claim that limits the relevant market to a "single brand, franchise, institution, or comparable entity that competes with potential substitutes." *Intl. Equip. Trading, Ltd.*, 2013 WL 4599903 at *4; *see also Right Field Rooftops, LLC*, 87 F. Supp. 3d at 888 (plaintiff failed to "define a relevant product market in a single brand product").

---

[8] ISACA notes that even if the CMMI Certification Business, or any business, did have some unique attributes, this does not mean that it has no substitutes. *See Maui Jim, Inc.*, 386 F. Supp. 3d at 946–47 ("Even though Maui Jim has alleged some basis for the uniqueness of its sunglasses . . . our conclusion remains the same that the counterclaims do not permit an inference the sunglasses are not interchangeable or that consumers are at all 'locked in' to purchasing sunglasses only from Maui Jim.").

The narrow exception under which a plaintiff may state a claim based upon a single brand of a product or service requires it plausibly to allege that: (a) she is a consumer or competitor of ISACA's produce/service, *see McGarry & McGarry, LLC*, 937 F.3d at 1065 (Seventh Circuit presumes that competitors and consumers can bring antitrust claims) <u>and</u> (b) ISACA's product/service either (i) locks-in consumers to the specific brand by nature of the product, or (ii) is so "unique that it is likely that there is no substitute." *Eastman Kodak Co.*, 504 U.S. 451, 461-79, 482; *Right Field Rooftops, LLC*, 87 F. Supp. 3d at 887. Riley does not satisfy these requirements. Indeed, even if Riley had plausibly alleged lack of substitutes (she does not), she still would not adequately satisfy the requirements of alleging a product market limited to a single brand of product or service.

*Neither consumer nor competitor.* As described in Section I.A, *supra*, Riley has failed to plausibly allege that she is either ISACA's consumer or competitor. Rather, she was ISACA's contractor and acted as an intermediary between ISACA and its customers. Her attempt to allege a product market limited to ISACA's product/service falters from the start.

*No uniqueness allegations*. It is beyond cavil that Riley admits and indeed attaches documentation to demonstrate that ISACA's services do have market substitutes. *See* Compl. Exhibit C.

*No lock-in*. To advance a lock-in theory against a seller, a complaint must allege that: (i) *after* the consumer purchased a product or service, the seller changed its policies to force the consumer to use a specific aftermarket part or service to continue use of the original service or product; or (ii) at the time of purchase, the consumer was unable to assess a product's life-cycle cost. *Eastman Kodak Co.*, 504 U.S. at 473-75, 477, n. 24, 112 S.Ct. 2072. Riley has failed plausibly to allege that she was an ISACA consumer – *i.e.*, companies who pay to have their

16

"best practices" appraised – or that ISACA forced Riley to use an aftermarket to continue to receive a product of service. Riley has also failed to allege that ISACA locks in its consumers – *i.e.*, companies who pay to have their "best practices" appraised. To the extent Riley's lock-in "theory" can be described, it is that: (i) if customers desire to be appraised under ***ISACA's*** appraisal methodology, they must pay ***ISACA***, and (ii) if individuals such as Riley want to perform appraisals pursuant to ***ISACA's*** appraisal methodology, they need to go through ***ISACA*** to do so. *See* ¶¶ 1, 23, 24. This is emphatically not a lock-in claim under *Eastman Kodak Co.* Indeed, far from being "locked-in," Riley's contract with ISACA permitted her to exit the arrangement at any time and for ISACA to terminate her contract at any time. Compl. Exhibit G at ¶ 6(a) ("<u>Termination without Cause</u>. ***Either party*** may terminate this Agreement at any time, with or without cause…").

  D. <u>Riley does not adequately allege a per se violation of Section 1 of the Sherman Act</u>

  On page 19 of her amended complaint, Riley alludes to a "Per Se Violation of the [sic] Section 1 of the Sherman Act (15 USC 1)."[9] Because Riley failed to allege relevant market (see above), whether Riley alleged a "per se" violation is irrelevant. *See Khan v. Presence St. Mary & St. Elizabeth Hosps.*, No. 20 C 3819, 2020 WL 6750535, at *3 (N.D. Ill. Nov. 17, 2020) ("The failure to allege the existence of a relevant commercial market is fatal to a Sherman Act claim, regardless of whether the Court applies a ***per se analysis***, quick-look review, or rule-of-reason analysis" *aff'd sub nom. Khan v. Presence Chicago Hosps. Network*, No. 21-2159, 2022 WL

---

[9] ISACA asserts that Riley's Sherman Section 1 claim should be evaluated pursuant to the "Rule of Reason" framework, which requires the showing of a relevant market, rather than be evaluated as a "per se" violation of Section 1. As the Seventh Circuit as held, "Under a Rule of Reason analysis, the plaintiff carries the burden of showing that an agreement or contract has an anticompetitive effect ***on a given market within a given geographic area.***" *Agnew*, 683 F.3d at 335. ISACA has explained above that Riley does not allege anticompetitive effect or injury on a relevant market.

42731 (7th Cir. Jan. 5, 2022). In the interest of completeness, however, defendant notes that Riley did not assert a per se claim.[10]

Although it is not exactly clear what practice Riley alleges was a per se violation (*see* ¶¶ 60-62, alluding to a per se violation of Section 1 of the Sherman Act and then obliquely referencing "the sequence of events described above"), it appears that she's referring to the alleged 2016 acquisition of the CMMI Certification Business. *See* ¶¶ 54-59. Specifically, Riley alleges that ISACA paid ~$8.2 million to CMU for the CMMI Certification Business – a price that Riley alleges was "15 to 30 times lower than the market price." *See* ¶ 58. From this, Riley concludes: "Defendant ISACA's acquisition of the CMMI Certification Business could happen [sic] by ***price-fixing*** to the lowest price to eliminate the competition in the CMMI Certification Business." ¶ 59.

These allegations fail for multiple reasons. First, if Riley's is referring to the 2016 acquisition, her claim is time-barred. *See* 15 U.S.C.A. § 15b (four-year statute of limitations for antitrust actions). Second, as with Riley's amended complaint generally, her price-fixing assertion rests on a fundamental misunderstanding of antitrust law. Riley fails to allege any way that ISACA's mere acquisition of the CMMI business caused the creation of a monopoly that was not present previously. Even if it did, this is not sufficient to allege a monopolization claim, the possession of a monopoly alone is not actionable. *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) Third, a "price-fixing" agreement generally refers to an agreement between sellers (i.e., competitors) to collude to set the prices of their

---

[10] While the "standard framework" for analyzing Sherman Section 1 claim is the "Rule of Reason," a stricter, both the Supreme Court and the Seventh Circuit have cautioned that "the range of conduct subject to analysis under the *per se* rule is narrow." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 336 (7th Cir. 2012) (quoting *NCAA v. Bd. of Regents*, 468 U.S. 85, 104, 104 S.Ct. 2948, 82 L.Ed.2d 70 (1984)). *Ctr. Video Indus. Co. v. United Media, Inc.*, 995 F.2d 735, 737 (7th Cir. 1993) (citing *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988)).

goods or services above or below the prevailing market prices. *See Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011) ("Ordinarily, price-fixing agreements exist between sellers who collude to set their prices above or below prevailing market prices."). Here, Riley alleges nothing of the sort. Rather, all that Riley alleges is that ISACA acquired the CMMI Certification Business for a price lower than what she believes was market value. Riley fails to allege that the arm's length transaction tended to restrict competition and decrease output (foreclosing a per se violation) nor does she assert that any element of it injured competition or damaged any relevant market.

### III. The Court Should Dismiss Riley's Claim that ISACA Violated Section 8 of the Clayton Act because Riley Fails to Allege the Elements of the Claim[11]

Count One of Riley's amended complaint alleges, in part, that ISACA violated Section 8 of the Clayton Antitrust Act (15 U.S.C. 19). *See* ¶ 132. Section 8 of the Clayton Act provides, in relevant part, that "[n]o person shall, at the same time, serve as a director or officer in any two corporations . . . that are . . . competitors[] so that the elimination of competition by agreement between them would constitute a violation of any of the antitrust laws." 15 U.S.C. § 19(a)(1). Section 8 also provides that each of the corporations at issue must have more than $45,257,000 in aggregated capital, surplus, and undivided profits. *Id*. at (a)(5); Revised Jurisdictional Thresholds for Section 8 of the Clayton Act, 88 Fed. Reg. 3742 (Jan. 20, 2023).[12]

Riley's Clayton Section 8 consists of a single allegation: General (ret) Gregory J. Touhill, who is the "Director of CMU SEI's CERT Division" was "taken" on the ISACA board in 2018 and has continued to be a member since then. *See* ¶ 13.

---

[11] Riley mistakenly refers to her Clayton Section 8 claim as a Clayton "Section 19" claim, presumably because Section 8 of the Clayton Act is codified at 15 U.S.C. 19.

[12] There are some exceptions to this requirement. *See* 15 U.S.C. 19(a)(2). Riley does not allege these exceptions either.

Put simply, Riley fails to allege the basic elements of a Clayton Section 8 claim. First, Riley does not allege that CMU and ISACA are "competitors," as is required by the statute. *See Las Vegas Sun, Inc. v. Summa Corp.*, 610 F.2d 614, 618–19 (9th Cir. 1979) ("The language of section 8 presumes that the allegedly interlocking corporations are competitors, i. e., presently competing. . . . **Clearly, where competition does not exist, the statute cannot apply**."). Rather, Riley simply alleges that ISACA acquired the CMMI Certification Business from CMU. *See* ¶ 10. Second, Riley does not allege that each of the companies "has capital, surplus, and undivided profits aggregating more than" $45,257,000. Indeed, Riley says nothing at all about CMU's finances. Because Riley fails to allege the elements of a Clayton Section 8 claim, the Court must dismiss it. *See Biers v. Washington State Liquor & Cannabis Bd.*, No. C15-1518JLR, 2016 WL 3079025, at *11 (W.D. Wash. June 1, 2016) (dismissing "conclusory" Clayton Section 8 claim where plaintiff failed to allege the elements of an interlocking directorates claim.).

## IV.    The Court Should Dismiss Riley's Claim for Unjust Enrichment

In addition to the federal Sherman Act and Clayton Act claims, Riley also brings a state law claim for unjust enrichment. This claim fails at the outset because Riley fails to allege which state law she seeks to apply. *See Sandee's Catering v. Agri Stats, Inc.*, 20 C 2295, 2020 WL 6273477, at *12 (N.D. Ill. Oct. 26, 2020) ("By failing to clearly state under which laws . . . Plaintiff wishes to bring its unjust enrichment claims, Plaintiff has not met its Rule 8 pleading requirements."). In her complaint, Riley alleges that, through the parties' contract, "The Defendant forces the Governing Law as the home state of Illinois, which is discriminatory to the Plaintiff who belongs to other State." ¶ 101. This does not salvage Riley's claim for several reasons. First, Riley does not actually allege in that her unjust enrichment claim should be brought under Illinois law – indeed, Riley's reference to "Illinois law" comes in a separate section of the brief. What is more, the reference to Illinois law is puzzling as the contract that

20

Riley **attached to her complaint** states that "This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania . . . ." (Compl. Exhibit G at 11(c)), not the laws of Illinois.

In any event, it is black letter law that a plaintiff may not bring a claim for unjust enrichment where a contract governs the relationship between the parties. *Graham v. Midland Mortg. Co.*, 406 F. Supp. 2d 948, 952 (N.D. Ill. 2005) ("[U]nder Illinois law, a plaintiff 'may not state a claim for unjust enrichment when a contract governs the relationship between the parties.'") (quoting *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir.1985)); *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 169–70 (3d Cir. 2014) ("Under Pennsylvania law, "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract"). Here, Riley's claim arises from her contractual relationship with ISACA. The unjust "benefit" that she alleges ISACA retained is the "anticompetitive and monopolistic prices" that Riley as paid to ISACA under her contract with ISACA. ¶¶ 169.[13]

## V.      The Court Should Dismiss Riley's Complaint with Prejudice.

Riley's amended complaint suffers from the same "fundamental misunderstandings about foundational principles of antitrust law" as her original complaint. *Sharif Pharm., Inc.*, 950 F.3d at 919. In both Riley's original complaint and her first amended complaint, Riley fails to allege antitrust standing or a relevant market.  These defects are so central to her antitrust claims that "further amendment would be futile." *Id*. Given this, ISACA respectfully requests that the Court dismiss Riley's amended complaint with prejudice.

---

[13] Plaintiff's allegation that her contract with ISACA is "unenforceable because it promotes antitrust, anticompetitive activities" (¶ 118) is entirely conclusory and must be ignored. *See Iqbal*, 556 U.S. at 678; *see also MacIntyre v. Moore*, 335 F. Supp. 3d 402, 415-16 (W.D.N.Y. 2018) (dismissing unjust enrichment claim where party's claim that agreement was unenforceable was based on conclusory allegations).

## CONCLUSION

WHEREFORE, ISACA respectfully requests that the Court dismiss with prejudice

Riley's amended complaint in its entirety.

Dated:  March 7, 2023

Respectfully submitted,

ISACA, Inc.

By: */s/ Scott Mendeloff*           

GREENBERG TRAURIG, LLP
Scott Mendeloff
Marc Trachtenberg
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400
Firm ID No. 36511
mendeloffs@gtlaw.com
trachtenbergm@gtlaw.com

22

## <u>CERTIFICATE OF SERVICE</u>

I, Kevin J. Quilty, hereby certify that on this March 7, 2023, I caused the foregoing to be served on all counsel/parties of record via the Court's electronic filing system, via email to the address below:

Leigh Riley
leigh@drleighriley.com

 */s/ Kevin J. Quilty*
Kevin J. Quilty, Esq.