IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEIGH RILEY, GERARD DACHE, and HENRY SCHNEIDER, <br><br> Plaintiffs, <br><br> v. <br><br> INFORMATION SYSTEMS AUDIT AND CONTROL ASSOCIATION, INC., <br><br> Defendant. | No. 22 C 4465 <br> No. 22 C 4644 <br> No. 22 C 5566 <br><br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Information Systems Audit and Control Association, Inc. ("ISACA") controls and operates the Capability Maturity Model Integration ("CMMI Model"), a "best practices" model developed by Carnegie Mellon University and the Software Engineering Institute to assess a company's "CMMI Maturity Level Rating." (Dkt. 45, No. 22 C 4465, ¶¶ 1, 8, 10). ISACA sells an appraisal service using the CMMI Model to companies and government agencies. (*Id.* ¶¶ 8, 10–11). Organizations often consider a company's CMMI Maturity Level Rating in deciding whether to employ an entity. (*Id.* ¶¶ 93–94). ISACA itself does not, however, actually conduct the appraisal directly; rather, third-party "Certified Lead Appraisers" ("CLA") run the CMMI Model appraisals, and ISACA vets the work for compliance with its standards before accepting the results. (Dkt. 45-7).

The three plaintiffs here—Leigh Riley, Gerard Dache, and Henry Schneider—were CLAs. (*Id.* ¶¶ 1–2; Dkt. 6, 22 C 4644, ¶¶ 1–2; Dkt. 6, 22 C 5566, ¶¶ 1–2). After ISACA terminated its contracts with each plaintiff, they initiated separate lawsuits with nearly identical claims alleging antitrust violations under Sections 1 and 2 of the Sherman Act and Section 7 of the Clayton Act,

1

as well as unjust enrichment. (*See generally* Dkt. 45, No. 22 C 4465; Dkt. 6, 22 C 4644; Dkt. 6, 22 C 5566). ISACA moved to dismiss each complaint for failure to state a claim. (Dkt. 48, No. 22 C 4465; Dkt. 23, No. 22 C 4644; Dkt. 23, No. 22 C 5566); Fed. R. Civ. P. 12(b)(6). The Clerk of the Court consolidated the three cases before this Court. All three motions will be considered together.

Under Federal Rule of Civil Procedure 12(b)(6), "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, courts "accept the allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307 (7th Cir. 2021) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Allen*, 41 F.4th at 850 (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). At the same time, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

It bears emphasis that the Supreme Court first signaled a change for evaluating 12(b)(6) motions in an antitrust case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). One reason for the shift was straightforward: litigation is costly, both financially and for the court system. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (quoting 5 Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 1216 (3d ed. 2004))) (cleaned up). This concern is particularly worrisome

2

for antitrust law. Antitrust discovery—and litigation generally—proves expensive. *See id.* at 558. As such, "the costs of [] federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984). Courts, then, must "insist upon" specificity and clarity in antitrust pleadings. *Twombly*, 550 U.S. at 558; *see also Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Medical Specialties*, 15 F.4th 831, 835 (7th Cir. 2021) ("*Twombly* bars the discover-first, plead-later approach …"). The complaints here are deficient in both areas.

ISACA offers several reasons why the collective antitrust claims should be dismissed— mainly, the plaintiffs lack antitrust standing and antitrust injury, and the complaint fails to allege any of the necessary elements for violations of the Sherman and Clayton Acts. (*See generally* Dkt. 50, No. 22 C 4465). The Court focuses on only one fatal defect common to each antitrust count: the failure to allege a relevant product market.

Sections 1 and 2 of the Sherman Act and Section 7 of the Clayton Act require the plaintiff to plead a relevant product market (along with a relevant geographic market) where the alleged antitrust behavior occurred in. *See, e.g.*, *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 451 (7th Cir. 2020) (Section 2); *Paramount Media Group, Inc. v. Village of Bellwood*, 929 F.3d 914, 921 (7th Cir. 2019) (Section 1); *Federal Trade Comm'n v. Advocate Health Care Network*, 841 F.3d 460, 467 (7th Cir. 2016) (Section 7). A relevant product market encompasses "products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 404 (1956); *see also Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 918 (7th Cir. 2020). "[A] manufacturer's own products do not [generally] comprise a relevant product market," nor

does a company's natural monopoly over its own products. *Green Country Food Market, Inc. v. Bottling Grp., LLC*, 371 F.3d 1275, 1282 (10th Cir. 2004); *see also E.I. du Pont*, 351 U.S. at 393 ("[The] power that … automobile or soft-drink manufacturers have over their trademarked products is not the power that makes an illegal monopoly. Illegal power must be appraised in terms of the competitive market for the product."); *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992) ("TVCN's amended complaint specifically names the TNT channel as the relevant product market monopolized by TNT. However, a company does not violate the Sherman Act by virtue of the natural monopoly it holds over its own product.").

The plaintiffs here do not allege sufficient facts to establish a relevant product market. The purported "market in which Defendant ISACA is a monopoly is called the CMMI Certification Business." (Dkt. 45, No. 22 C 4465 ¶ 23). But the CMMI Certification is simply ISACA's exclusive product, commercialized from its nonprofit development by the Software Engineering Institute with Carnegie Mellon University. (*Id.* ¶¶ 23, 25). And a manufacturer's own product does not generally "comprise a relevant product market." *Green Country*, 371 F.3d at 1282. Moreover, the plaintiffs fail to explain what the CMMI product is, why the product is useful, what market it operates in, what products might have reasonable interchangeability, and—if the relevant product is simply a company's own product—how their case falls outside the general rule outlined above. *E.I. du Pont*, 351 U.S. at 404. The complaint's many statements about adverse "impact[s] [on] the consumer" and the "monopoly" held by ISACA only amount to hollow, conclusory statements— exactly what *Twombly* cautioned against. (Dkt. 45, No. 22 C 4465 ¶ 23); *see also AAPS*, 15 F.4th at 834 ("Repetition cannot substitute for factual allegations.").

The claim for unjust enrichment fares no better. Unjust enrichment occurs when a defendant wrongly retains "a benefit to the plaintiff's detriment, and that defendant's retention of

the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). "Claims for breach of contract and unjust enrichment are mutually exclusive: '[U]njust enrichment is based on an implied contract,' so it does not apply when an actual contract governs the parties' relationship." *Blanchard & Assocs. v. Lupin Pharmaceuticals, Inc.*, 900 F.3d 917, 921 (7th Cir. 2018) (quoting *People ex rel. Hartigan v. E&E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992)); *see also SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 228 (3d Cir. 2022) ("[T]he Pennsylvania Supreme Court has left no doubt that unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings." (cleaned up)). The three plaintiffs identify as "contractors of Defendant ISACA's CMMI Certification Business," (Dkt. 45, No. 22 C 4465 ¶ 1), and declare that "the relationship between [the plaintiffs] and ISACA is clearly founded upon a contract," (Dkt. 52, No. 22 C 4465 at 13). The conceded existence of a contract decides the case easily. The plaintiffs cannot recover, as unjust enrichment "does not apply when an actual contract" exists. *Blanchard*, 900 F.3d at 921.

Given these two deficiencies and other potential issues, ISACA asks that the complaints be dismissed with prejudice. Ordinarily though, plaintiffs are afforded the chance to amend their complaints. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015). "Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss," absent futility, undue delay, prejudice, or bad faith. *Saint Anthony Hosp. v. Eagleson*, 40 F.4th 492, 517 (7th Cir. 2022) (quoting *Runnion*, 786 F.3d at 519). This strong

5

presumption counsels in favor of giving the three plaintiffs a chance to amend their complaints. Doing so would not be futile, dilatory, prejudicial, or undertaken in bad faith. Riley, Dache, and Schneider are also proceeding pro se; holding them to professional-lawyer standards of pleading would be unfair and contrary to the spirit of the long-established rule that pro se complaints "are held to less stringent standards than formal pleadings drafted by lawyers." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)).

A few gentle reminders for the plaintiffs if they choose to file amended complaints. Federal Rule of Civil Procedure 8 states that every "pleading that states a claim for relief must contain … a *short* and *plain* statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). To that end, paragraphs in a complaint should have one or two (generally short) sentences. Background information is also necessary. "Federal judges are generalists," so assuming familiarity with a particular industry invites confusion. *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. CPC Logistics, Inc.*, 698 F.3d 346, 350 (7th Cir. 2012). And articulating clear facts is only half of the work—facts must be paired with a correct understanding of the law.

For these reasons, the defendant's motions to dismiss for failure to state a claim are granted. (Dkt. 48, No. 22 C 4465; Dkt. 23, No. 22 C 4644; Dkt. 23, No. 22 C 5566). The dismissal shall be without prejudice to the filing of an amended complaint or complaints no later than July 5, 2023. If no complaint is filed by that date, the dismissal shall convert to one with prejudice. The motion for a class action is dismissed as moot. (Dkt. 62).

_____
Virginia M. Kendall
United States District Judge

Date: June 14, 2023